EDWARD F. MACKOWSKI ET AL. *v.* ZONING
COMMISSION OF THE TOWN OF STRATFORD
(AC 19237)

Lavery, C. J., and Spear and Mihalakos, Js.

Argued April 4—officially released August 29, 2000

*Gregory P. Lynch,* for the appellants (plaintiffs).

*George W. Boath, Jr.,* special assistant town attorney, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiffs, Edward F. Mackowski and Fairfield 2000 Homes Corporation,[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning commission of the town of Stratford (commission) denying their application for approval for the construction of an apartment building for the elderly. The plaintiffs claim that the commission failed to meet its burden of prov-

---

[1] Fairfield 2000 Homes Corporation is a regional nonprofit development corporation that has developed more than 200 affordable housing units in the cities and towns of Stamford, Bridgeport, Westport, Darien, Danbury and Wilton.

ing, by sufficient evidence, that a substantial public interest in health or safety clearly outweighed the need for the plaintiffs' housing units for senior citizens.[2] We reverse the judgment of the trial court.

The following facts are undisputed. Mackowski owned two parcels of property on Judson Place in Stratford and decided to develop affordable housing units on his parcels after reading a notice posted by the town of Stratford in a newspaper. Specifically, the notice stated that the town was seeking sites for housing for the elderly and specified that preference would be given to sites containing forty units or more.

On February 15, 1995, the plaintiffs submitted an application to the commission to construct an apartment building that would provide forty-three units of housing for senior citizens, with eleven of those designated as "affordable housing" pursuant to General Statutes § 8-39a.[3] On March 19, 1996, and on April 16, 1996, public hearings on the plaintiffs' application were held. During those hearings, the commission's professional staff, various experts, the plaintiffs and several neighbors of the proposed development site offered testimony and evidence concerning various aspects of the project, documenting the benefits and disadvantages of building on the site.[4] On June 10, 1996, the commission

[2] The commission claims that the public interest in health and safety could not be protected by reasonable changes to the plaintiffs' proposed development. Because we agree with the plaintiffs that the commission failed to meet its burden of proving, by sufficient evidence, that a substantial public interest in health or safety clearly outweighed the need for the plaintiffs' housing units for the elderly, we do not address this issue.

[3] General Statutes § 8-39a defines "affordable housing" as "housing for which persons and families pay thirty per cent or less of their annual income, where such income is less than or equal to the area median income for the municipality in which such housing is located, as determined by the United States Department of Housing and Urban Development."

[4] The site, which is located near the center of the town and surrounded by several asphalt parking lots, is a combination of three separate parcels of land containing approximately 67,686 square feet.

met in an administrative session and voted unanimously to deny the plaintiffs' application.[5] The plaintiffs appealed to the trial court.

The trial court concluded that there was sufficient evidence in the record to support the fifth reason stated by the commission for denying the plaintiffs' application, namely, that "[t]he adverse impacts on the health, safety, and welfare of the community which would be created by the scale, density, [and] massiveness of this project and its impact on traffic patterns appear unnecessary in achieving affordability for [the plaintiffs'] development." Specifically, the court found that there was sufficient evidence for the commission to have concluded that the proposed development could have an adverse impact on the sewer system, and that such an impact implicated a substantial interest in the public health. The court also found that traffic safety was a substantial public interest and that there was sufficient evidence to show that traffic congestion in the area

---

[5] The commission cited six specific reasons as to why the plaintiffs' application was being denied: (1) "There are technical zoning deficiencies regarding the lot lines for this development"; (2) "This petition is in violation of two sections of the existing Zoning Regulations—Section 5.3 under which the petitioner has filed this application and Section 12 (parking)"; (3) "There are several major inconsistencies with goals, policies and recommendations of the Town's current Plan of Development"; (4) "The proposal lacks sensitivity to the existing character of the surrounding neighborhood which has unique historic value, evidenced by its being listed in the National Register of Historic Places"; (5) "The adverse impacts on the health, safety, and welfare of the community which would be created by the scale, density, [and] massiveness of this project, and its impact on traffic patterns appear unnecessary in achieving affordability for this development"; and (6) "Since this petition has been submitted with reference to Section 8-30g of the Connecticut General Statutes, the Zoning Commission recognizes its responsibility to weigh the merits of this proposal in view of the community's need for affordable housing. After careful consideration of evidence in the record, the Commission believes that the anticipated adverse impact of this development on the neighborhood and the community as a whole far outweigh the need for the eleven affordable units that would be created by this development."

would greatly increase. The court, therefore, dismissed the plaintiffs' appeal, concluding that "the commission was justified in denying the application because it was necessary to protect the public interest in health and safety." This appeal followed. Additional facts will be discussed where relevant to the issue on appeal.

The plaintiffs claim that the commission failed to meet its burden by proving, by sufficient evidence, that a substantial public interest in health or safety clearly outweighed the need for the plaintiffs' housing units for the elderly. We agree.

The following additional facts are necessary to the resolution of this appeal. At the public hearings, the plaintiffs submitted a "Traffic Impact Report" prepared by I.K. Chann Associates, Transportation Engineers (report). The report summarized data concerning existing traffic and parking conditions in the area surrounding the proposed housing. Using special traffic counts, the report included a calculation of the capacity of the intersection of Judson Place and Main Street, the intersection most likely to be affected by the development. The report, applying industry standards as defined in a 1985 highway capacity manual, stated that the existing capacity levels during the morning and evening rush hours were good to excellent and that considerable reserve capacity was available at the intersection that could accommodate any future traffic growth caused by the development.

A study of accident data on Judson Place and its two intersections was also conducted, the results of which were included in the report. It was found that seven minor accidents, with no injuries, had taken place on Judson Place and at its two intersections during the period of 1992 through 1994. Thus, the report stated that there were a small number accidents in the area.

The report also included an estimation of the amount of traffic that would be generated by the plaintiffs' development. Because it was assumed that many of the elderly residents would be retirees, the report stated that travel would be light and likely to occur during off peak hours. Additionally, it was noted in the report that bus service was available for the elderly population living in the Main Street area because there was a bus stop located at Judson Place, just a few hundred feet from the proposed apartment buildings. The report also included a review of the adequacy of the site plan for the affordable housing units. It stated that the driveway of the building would provide excellent access to the building and parking areas.

The commission also compiled information concerning the impact on traffic from the plaintiffs' proposed development, which essentially corroborated the report submitted by the plaintiffs. An employee of the town planning department prepared and submitted to the commission a document entitled "Traffic Impact Study Evaluation" (study) that verified the figures and rates in the report that had been submitted by the plaintiffs. The study also stated that additional traffic on Judson Place resulting from the proposed housing would total between 1.5 percent and 3.3 percent and that the volume of the average daily traffic on Main Street would increase by less than one percent, a rather insignificant amount. Furthermore, the town's police department, fire department, engineering department, building department, public works department and health department were all given the opportunity to review the plaintiffs' application and plans, none of which had unfavorable comments concerning the proposed housing plans.

The only individuals who expressed concern about the traffic density at the development site were some of the neighboring residents, who stated that the traffic

conditions that existed in the neighborhood were poor because of the high concentration of churches and commercial activities in the immediate vicinity. Specifically, several residents pointed out that, at times, the traffic on Judson Place was limited to a single lane due to extremely limited off street parking facilities for commercial neighbors. Additionally, the town engineer expressed concerns regarding the capacity of the sanitary sewer system.

General Statutes § 8-30g (b) governs the plaintiffs' appeal and provides in relevant part: "Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such decision pursuant to the procedures of this section. . . ."

In *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 735 A.2d 231 (1999), our Supreme Court identified the differences between an affordable housing land use appeal pursuant to § 8-30g, and a traditional zoning appeal. "First, an appeal under § 8-30g (b) may be filed only by an applicant for an affordable housing development whose application was denied or [was] approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . . Thus, where the town has granted such an application, either outright or without imposing such restrictions, there is no appeal under § 8-30g (b).

"Second, the scope of judicial review under § 8-30g (c) requires the town, not the applicant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for

that decision. By contrast, in a traditional zoning appeal, the scope of review requires the appealing aggrieved party to marshal the evidence in the record, and to establish that the decision was not reasonably supported by the record. *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 542–43, 600 A.2d 757 (1991).

"Third, if a town denies an affordable housing land use application, it must state its reasons on the record, and that statement must take the form of a formal, official, collective statement of reasons for its actions. Id., 544. By contrast, in a traditional zoning appeal, if a zoning agency has failed to give such reasons, the court is obligated to search the entire record to find a basis for the [agency's] decision. . . .

"We reach this conclusion based on the text and the purpose of the statute. The text requires that the town establish that sufficient record evidence supports the decision from which such appeal is taken and the reasons cited for such decision . . . . General Statutes § 8-30g (c) (1) (A). Thus, textually the statute contemplates reasons that are cited by the town. This strongly suggests that such reasons be cited by the zoning agency at the time it took its formal vote on the application, rather than reasons that later might be culled from the record, which would include, as in a traditional zoning appeal, the record of the entire span of hearings that preceded the vote. Furthermore, the statute requires that the town establish that: its decision [was] necessary to protect substantial public interests in health, safety, or other matters which the [agency] may legally consider; General Statutes § 8-30g (c) (1) (B); those interests clearly outweigh the need for affordable housing; General Statutes § 8-30g (c) (1) (C); and those public interests cannot be protected by reasonable changes to the plan. General Statutes § 8-30g (c) (1) (D). These

requirements strongly suggest that the town be obligated, when it renders its decision, to identify those specific public interests that it seeks to protect by that decision, so that the court in reviewing that decision will have a clear basis on which to do so. Furthermore, the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state. *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, [228 Conn. 498, 511, 636 A.2d 1342 (1994)]. Requiring the town to state its reasons on the record when it denies an affordable housing land use application will further that purpose because it will help guard against possibly pretextual denials of such applications. We therefore read the statute, consistent with its text and purpose, to require the town to do so." (Citation omitted; internal quotation marks omitted.) *Christian Activities Council, Congregational* v. *Town Council*, supra, 249 Conn. 575–78.

Here, the commission has failed to meet its burden of proving, by sufficient evidence, that its denial of the plaintiffs' application was necessary to protect substantial public interests in health, safety or other matters that the commission may legally consider. The evidence adduced at the public hearings failed to specifically address the reasons why the public interests involved were substantial enough to outweigh the town's undisputed need for affordable housing. At the hearings, a number of concerns and issues were raised about the proposed development, including its impact on density, the town plan of development for the area, traffic, parking, zoning regulations, the sewer system and housing affordability. The trial court found that the commission had failed to produce sufficient evidence to support its denial of the plaintiffs' application as to most of these issues except for those relating to the adverse impact on traffic and the sewer system.

The commission never addressed the traffic and sewage concerns in detail; rather, it made generalized statements concerning the adverse impacts on the health, safety and welfare of the community that would be created by the project and remarked that those adverse impacts appeared to be unnecessary in achieving affordability for this development. The evidence before the commission from the town departments established that there would be no significant problems with traffic or the sewer system as a result of the proposed development. Neighbors of the proposed development did express concern with the impact on traffic from the development. While they claimed that at times traffic could be dense at the intersection of the proposed development, there was no record of any specific findings of fact, such as the frequency of the traffic, to support this allegation. Furthermore, while the town engineer expressed concerns regarding the effect that the continued development of the area would have on the capacity of the sanitary sewer system, there was no showing that a possibility of substantial harm could ever result. Specifically, the town engineer stated that sufficient capacity likely exists to accommodate the proposed development and that it should be checked periodically. On the basis of these facts, we conclude that there was insufficient evidence to support the commission's decision denying the plaintiffs' application. The evidence failed to show that the commission's decision was necessary to protect substantial public interests in health and safety or that such public interests clearly outweighed the need for affordable housing. Therefore, the trial court improperly dismissed the plaintiff's appeal.

The judgment is reversed and the case is remanded with direction to sustain the plaintiffs' appeal.

In this opinion SPEAR, J., concurred.

LAVERY, C. J., dissenting. I respectfully dissent from the majority's conclusion that the commission failed to meet its burden of proving, by sufficient evidence, that a substantial public interest in health or safety clearly outweighed the need for the plaintiffs' housing units for senior citizens. Accordingly, I would affirm the judgment of the trial court dismissing the plaintiffs' appeal from the decision of the commission denying their application to construct housing units for elderly residents.

As noted by our Supreme Court in *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 585, 735 A.2d 231 (1999), sufficient evidence in this context means "less than a preponderance of the evidence, but more than a mere possibility. We stated that the zoning commission need not establish that the effects it sought to avoid by denying the application are definite or more likely than not to occur, but that such evidence must establish more than a mere possibility of such occurrence. . . . Thus, the commission was required to show a reasonable basis in the record for concluding [as it did]. The record, therefore, must contain evidence concerning the potential harm that would result if the zone were changed . . . and concerning the probability that such harm in fact would occur." (Citation omitted; internal quotation marks omitted.) In an affordable housing land use appeal, as in a traditional zoning appeal, "[t]he zone change must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513, 636 A.2d 1342 (1994).

One of the reasons stated by the commission in its memorandum of decision for denying the plaintiffs' application was that the proposed development would have a negative impact on traffic in the area. The commission reached that conclusion not on the basis of speculation, but with support from specific testimony

placed before it. As the trial court noted from the record: "Many neighbors spoke about the on-street parking problem that currently exists, one neighbor describing the traffic flow on Judson Place as 'horrendous' when both sides of the street were used for parking. . . . One neighborhood resident reported that the public works project currently underway at the intersection of Main Street and East Broadway was undertaken because of the high volume of traffic through the streets. Other neighbors pointed out the East Broadway [construction]. Because this construction includes the installation of new traffic signals and a rerouting of traffic through this intersection, the traffic patterns will change as a result. Traffic on East Broadway will no longer be able to turn onto Main Street, meaning that more cars will likely be using Judson Place as the route for entering I-95. The proposed project has a single driveway for traffic to enter and exit from Judson Place. As mentioned above, neighbors also testified that on-street parking on Judson Place adds to the congestion at all times of the day and weekends from activities of the churches and organizations in the neighborhood, sometimes reducing the street into a single lane of traffic, a point the traffic engineer conceded. This evidence is sufficient to call into question the expert's turning movement analysis, and his conclusion about future traffic congestion during off peak hours."[1]

---

[1] The traffic report submitted by the plaintiffs and noted by the majority, which tends to support the conclusion that the proposed development would not significantly increase area traffic, states that traffic generated by elderly housing of this type is minimal and that the planned parking will not be fully occupied because the housing would consist of an elderly population. The trial court questioned the reliability of such a statement given that the term "elderly housing" might not adequately describe the development. The trial court stated: "There was much dispute about what the actual makeup of the residents of the project would be. Even if restricted as 'elderly housing,' only one resident must be 62 or older, meaning the resulting mix could need more or less parking than the 'average' elderly housing project. Therefore, any conclusions based on the elderly designation of the project are suspect."

I conclude, as did the trial court, that this evidence was sufficient for the commission to have concluded that the project as proposed would greatly add to traffic congestion in the area. Traffic safety is a substantial public interest and adequately justifies the commission's denial of the plaintiffs' application.

Accordingly, I respectfully dissent.