[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The town of Simsbury has an undeniable need for affordable housing. The plaintiffs, Riverbend Associates, Inc., Griffin Land and Nurseries, Inc. and Fairfield 2000 Homes Corporation (collectively River Bend) proposed a development which would alleviate that need. The defendant, planning commission of the town of Simsbury, denied an application for a subdivision which would be part of that development. This appeal from the planning commission's denial raises the question whether the commission has met its burden of proving, under the affordable housing land use appeals statute, not only that its decision is supported by sufficient evidence in the record but also that its decision is necessary to protect substantial public interests", that those "public interests clearly outweigh the need for affordable housing", and that those "public interests cannot be protected by reasonable changes to the affordable housing development" proposed by River Bend. See General Statutes §8-30g (g).
In April 2000 the planning commission denied a subdivision application submitted by River Bend for 78 homes on subdivided lots, as part of a 640-unit development, 160 of which units qualified as "affordable housing," i.e., homes within the economic reach of persons of low or moderate income.[1] Because all of the relevant town agencies also denied River Bend the permits or approvals it needed to proceed with that development, in May 2000 it submitted a revised and much-reduced development proposal. Included in this proposal for 371 homes on 363 acres River Bend owns in Simsbury was a subdivision application for 102 homes on subdivided lots, each with its own septic system.
At the same time that River Bend submitted this subdivision application to the planning commission it submitted to the Simsbury zoning commission a request for establishment of a new "Housing Opportunity Development" (HOD) zone to facilitate the development of affordable housing on this property, rezoning of the property to the proposed HOD zone and approval CT Page 15334-gj of a master site plan for the entire development, which, in addition to the 102 single family homes included in the subdivision application, would include 269 homes on common interest ownership land. of the total 371 homes in the development, 25% or 93 homes would be reserved for families with low or moderate income.
The parcels of land that make up the 363 acres on which River Bend proposed to place its affordable housing development were and are already zoned for residential use. River Bend proposed a zone change only because Simsbury, in apparent violation of General Statutes § 8-2, has no zoning regulations that would facilitate the development of affordable housing by private interests.[2]
River Bend also applied to the Simsbury water pollution control authority (the authority), which operates its sewer system, for permission to connect the 269 homes on the common interest ownership land to the system and to the Farmington Valley Health District (the district) for approval for the 102 homes in the subdivision with individual septic systems. Finally, it sought a wetlands permit for certain regulated activities from the Simsbury conservation commission. Although the district, as the regional subagency of the state health department with jurisdiction over household septic systems in this area, found the soil conditions suitable for the installation of septic systems for 100 of the 102 homes in the subdivision, the authority refused to allow placement of these systems on 55 of the 102 lots, which are located within the sewer district.[3]
This subdivision application, too, was denied by the planning commission on July 25, 2000, as were all of the other permits and approvals sought by River Bend from the various town agencies for this smaller development.[4] This appeal followed. Because 25% of the homes in the development are intended for persons of low or moderate income and will be restricted for 30 years to sale to such persons or families, the appeal proceeds under General Statutes § 8-30g, the affordable housing land use appeals statute.
 I
Based on the Stipulation of Facts and Exhibits provided at the hearing of this appeal on July 15, 2002 and the evidence introduced on that date, the court finds that the three plaintiffs are aggrieved by the planning commission's decision. River Bend Associates, Inc. has been the fee owner of the property in question throughout these proceedings, and Griffin Land and Nurseries, Inc., its wholly owned subsidiary, is the entity whose subdivision application was denied. See General Statutes CT Page 15334-gk § 8-30g (f). Fairfield 2000 Homes Corporation has a contractual relationship with Griffin Land and Nurseries, Inc. to provide certain services in connection with the affordable housing component of the proposed development, for a fee, and the denial of the subdivision application has interfered with the provision of those services and the consequent receipt of fees by Fairfield 2000 Homes Corporation. Thus, it meets the tests for classical aggrievement in that it has a "specific personal and legal interest [in the subject matter of the planning commission's decision] which "has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Harris v. ZoningCommission, 259 Conn. 402, 410, 788 A.2d 1239 (2002).
 II
The scope and standard of judicial review of an appeal brought under General Statutes § 8-30g has changed while this appeal has been pending as a result of the Connecticut Supreme Court's decision in QuarryKnoll II Corp. v. Planning and Zoning Commission, 256 Conn. 674, 780 A.2d 1
(2001).
At the time the instant appeal was filed, the version of the appeal statute in effect provided in relevant part:
 Upon an appeal taken under subsection (b) of this section, the burden shall be on the Commission to prove, based upon the evidence in the record compiled before such commission that (1) (A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the Commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development. If the Commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.
Prior to Quarry Knoll II, the applicable explanation of this standard of review was set forth in Christian Activities Council, Congregationalv. Town Council, 249 Conn. 566, 583, 735 A.2d 231 (1999). Under that CT Page 15334-gl standard, the commission had the burden on an affordable housing appeal to persuade the reviewing court that there was sufficient evidence in the record to support the reasons given for its decision. If the commission was able to show that "sufficient evidence" reasonably supported its determination as to subsections (A) through (D), the commission's decision had to be upheld. See Christian Activities Council,Congregational v. Town Council, supra, 249 Conn. 583.
In Quarry Knoll II, the Court considered the effect of Public Act 00-206, § 1(g), effective October 1, 2000, on the scope of judicial review. It determined that, because the Act served to clarify the statute, it should be applied retroactively. The effect of the Act, as articulated in Quarry Knoll II, was to change the standard of review by separating into different sentences subsection (A) and subsections (B), (C) and (D). Thus, the Court described a two-step judicial review procedure to be applied to each reason articulated in the commission's decision:
 Under § 8-30g (c) (1) (A), the court must determine, as we had prior to the enactment of P.A. 00-206 . . . whether the commission has shown that its decision is supported by `sufficient evidence' in the record. Under subparagraphs (B), (C) and (D) of the statute, however, the court must review the commission's decision independently, based upon its own scrupulous examination of the record.
Quarry Knoll II Corp. v. Planning and Zoning Commission, supra,256 Conn. 727.
"The difference between the Christian Activities Council and QuarryKnoll review processes is that for the three-part statutory standard of Subsections (B), (C) and (D) to which each commission reason is held, the Christian Activities Council court gave deference to the Commission's determination, so long as it was supported by "sufficient evidence' in the record; while under Quarry Knoll, the reviewing court makes a scrupulous, plenary review of the record and arrives at its own independent determination of whether the Commission's reasons to deny an application meet the three-part test." Landworks Development, LLC v.Planning and Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 00 0505525 (February 8, 2002). "If the Commission meets the initial burden of proof that there is sufficient evidence in the record to support a reason for denial, the trial court then considers the three other statutory factors; namely, whether the decision is necessary to protect substantial public interests in health, safety, or CT Page 15334-gm other matters which the Commission may legally consider; that such public interests clearly outweigh the need for affordable housing; and that such public interests cannot be protected by reasonable changes to the affordable housing development. As determined by Quarry Knoll, the Commission has the burden of proof on all of these issues." Id.
"In order to prove that the Commission's decision was necessary to protect substantial public interests in health, safety or other matters which the Commission could legally consider it must establish (1) that it reasonably could have concluded that substantial public interests were implicated by the action based upon the evidence in the administrative record and (2) that it would reasonably have concluded from the Record evidence that its decision was necessary, namely that any public interests could not have been protected if it had approved the application, which is more than a mere possibility that granting the application would harm the public interests." Landworks Development, LLCv. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525, citing Christian Activities Council, Congregational v. TownCouncil, supra, 249 Conn. 588-89. The burden of proof on the commission that such public interests clearly outweigh the need for affordable housing has similar considerations and, thus, the need for affordable housing is determined on a local and not a regional basis. See id.
"In order to meet the burden of proof that the public interests cannot be protected by reasonable changes to the affordable housing development, the Commission has the burden of proof that the public interests could not be protected by reasonable changes to the size and density of the zone or to the specified designs presented by the applicant." Landworks Development, LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525, citing Kaufman v. ZoningCommission, 232 Conn. 122, 137 (1995); see also Smith-Groh v. Planningand Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 01 0506781 (January 28, 2002).
In keeping with the mandate of Quarry Knoll II, this court has conducted a "plenary review" of the administrative record as it came to the court[5] in order to make its "independent determination" whether the planning commission has sustained its burden of proof as to the three findings contained in subparagraphs (B), (C) and (D) of § 8-30g (g); viz., that "its decision is based upon the protection of some substantial public interest; the public interest clearly outweighs the need for affordable housing; and there are no modifications that reasonably can be made to the application that would permit the application to be granted."Quarry Knoll II Corp. v. Planning Zoning Commission, supra,256 Conn. 727. CT Page 15334-gn
 III
In its Appeal from the planning commission's denial, River Bend alleged that "the town of Simsbury has an acute need for affordable housing". ¶ 20. In particular, it alleged, inter alia, that: In 1998 the average price of the 56 new homes built and sold in Simsbury was $456,000; in the same year the average sale price of all homes sold in Simsbury was $236,000, and only 57 sold for less than $150,000; to purchase a median-priced new home built in Simsbury in 1998, a household would require an annual income of more than $150,000. ¶ 20. While these allegations were denied by the planning commission in its Answer, they were supported by evidence in the record, see, e.g., ROR 2, and the commission introduced no contrary evidence and has made no argument on this appeal that these claims are in error.
In fact, the commission admitted River Bend's allegation that only 3% of Simsbury's entire housing stock, or 263 units out of almost 8,700 units, qualified as "price-restricted, affordable, or government-assisted units as defined in state statutes, ranking Simsbury 99th of 169 towns in Connecticut." Appeal, ¶ 20f. From this admission and the evidence in the record the court finds that the need for affordable housing in Simsbury is, indeed, acute and undeniable. Furthermore, the court finds, as did the planning commission, itself, that "River Bend's proposal is consistent with the objective of the Plan of Development to provide affordable housing." See ROR 191, p. 2. In fact, River Bend's proposal would increase the stock of affordable housing in Simsbury from 263 units to 356 units, an increase of 35%.
The decision of the planning commission must be evaluated in light: of Simsbury's need for affordable housing, River Bend's proposal to meet that need and the policy of the state of Connecticut to encourage the development of affordable housing.
 IV
"(T)he key purpose of § 8-30g [the affordable housing land use appeals statute] is to encourage and facilitate the much needed development of affordable housing throughout the state." West HartfordInterfaith Coalition, Inc. v. Town Council, 228 Conn. 498, 511,636 A.2d 1342 (1994). "As a remedial statute, § 8-30g must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) Kaufman v. ZoningCommission, supra, 232 Conn. 140. Consistent with the purpose of the statute, an agency like the planning commission, when it renders its CT Page 15334-go decision on a subdivision application submitted in aid of an affordable housing development, must state its reasons on the record, clearly identifying those specific public interests it seeks to protect, so that the court in reviewing that decision will have a clear basis on which to do so. See Christian Activities Council, Congregational v. Town Council, supra, 249 Conn. 577. It is only these reasons stated by the agency in its formal decision that can be the basis for the court's review, not "reasons that later might be culled from the record." Id.
Not only must the agency clearly state its reasons and the specific public interests it seeks to protect, but also the evidence adduced at the public hearings on an application must "specifically address the reasons why the public interests involved were substantial enough to outweigh the town's undisputed need for affordable housing." Mackowski v. Planning Zoning Commission, 59 Conn. App. 608, 616, 757 A.2d 1162, cert. granted, 254 Conn. 949, 762 A.2d 902 (2000) (appeal withdrawn September 21, 2001). The agency cannot rely on "generalized statements concerning the adverse impacts on the health, safety and welfare of the community" to justify a decision denying approval of an application related to an affordable housing development. Id., 617.
While the planning commission, in considering the subdivision application, was "not limited to considering only the effects of its actions that are definite or more likely than not," Kaufman v. ZoningCommission, supra, 232 Conn. 156, it could not reject the application "based on the mere possibility" that some harm might come to a public interest. Id. Rather, "(t)he record . . . must contain evidence concerning the potential harm that would result if the [subdivision application were approved] and concerning the probability that such harm in fact would occur." Id. "(T)his means that the defendant must establish that it reasonably could have concluded, based on the record evidence, that (1) there was some quantifiable probability — more than a mere possibility but not necessarily amounting to a preponderance of the evidence — that the legitimate preservation of open space would have been harmed by the zone change, and (2) the preservation of open space could not be protected if the zone change were granted." Christian ActivitiesCouncil, Congregational v. Town Council, supra, 249 Conn. 597.
Where a planning or zoning commission can protect the public interest while advancing the goal of affordable housing by conditionally granting a zone change or approving a subdivision application, it is "not only authorized but required" to do so rather than deny the requested approval. Kaufman v. Zoning Commission, supra, 232 Conn. 164.
A body of law has grown up around these axioms and their corollaries, CT Page 15334-gp and it is necessary for the court to measure the decision of the planning commission in denying River Bend's subdivision application against these principles.
 V
While there are problems with each of the planning commission's stated reasons for denying the subdivision application (see part VI, infra), the overarching flaw in its treatment of this subdivision application is its failure genuinely to weigh Simsbury's need for affordable housing against the various defects it found in the application and in the overall development and to prove that the latter "clearly outweigh" the former.
The planning commission disposed of its statutory obligation to determine whether the public interests it claimed to be protecting "clearly outweigh the need for affordable housing" in one conclusory sentence in its six-page "motion for denial": "The Commission further finds that the public interests stated with respect to its reasons for denial outweigh the need for affordable housing."[6]
The affordable housing appeals procedure firmly places the burden on the planning commission to prove that the public interests it seeks to protect clearly outweigh the need for affordable housing. This obligation has taken on growing importance, and recent cases underscore concern by reviewing courts that planning and zoning commissions often fail to fulfill this obligation. See Novella v. Planning and Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 00 0501467 (May 9, 2001) (addressing commission's failure to address subsection (C) with respect to any of the reasons it provided in its denial and stating that a commission must mike a finding that the public interests clearly outweigh the need for affordable housing and provide the reasons therefore); Mackowski v. Planning and Zoning Commission, supra, 59 Conn. App. 616 (finding that commission failed to address reasons why the public interests involved were substantial enough to outweigh the town's undisputed need for affordable housing).
In the present case, the record contains testimonial and documentary evidence of Simsbury's acute need for affordable housing. See Part III, supra. Upon the court's order, the planning commission submitted a listing of all references in its record to the presence of and the need for affordable housing in Simsbury, including any testimony at the public hearings on this application and the overall development and any discussions of that subject among members of the planning commission that are a matter of public record. The court searched those references in CT Page 15334-gq vain for any evidence that the planning commission received any information, other than that provided by River Bend, or conducted any discussions concerning the need for affordable housing and how that need stacked up against the problems it saw in River Bend's application.
In other words, there is no evidence in the record that the planning commission addressed or attempted to counter evidence about the lack of affordable housing in Simsbury. It is difficult to conceive how the commission performed the balancing test required by the statute when the record contains no evidence that the commission recognized or acknowledged such a need. See Charles E. Williams, Inc. v. PlanningCommission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 98 0492228 (May 26, 2000) (concluding that a commission cannot legitimately and honestly engage in the balancing exercise mandated by § 8-30g (c) (1) (C) if the "need" end of the balance beam isn't acknowledged to exist). Therefore, the court cannot find that the commission engaged in the balancing test necessary to satisfy its statutory obligation.
Even if the commission actually considered the need for affordable housing in Simsbury, it has not satisfied its burden of proof. The need for affordable housing in Simsbury is so great, and the town's efforts to improve the situation so minimal, that the interest in affordable housing should have outweighed any of the problems with the application cited by the commission, especially since it could have conditioned its approval of the subdivision application in such a way as to safeguard the legitimate public interests it perceived to be in danger. In balancing the need for affordable housing against the public interests involved, courts have weighed the town's track record in advancing the goals of affordable housing. See Smith-Groh v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 01 0506781 (determining that the need for affordable housing clearly outweighed any interest to the contrary after considering town's minimal efforts to addresses such need); see also Landworks Development, LLC v. Planning and ZoningCommission, supra, Superior Court, Docket No. CV 00 0505525 (considering town's significant efforts in building and implementing policies to build affordable housing and determining that public interests did clearly outweigh the need for affordable housing). In Landworks Development, the court noted that the town had adopted affordable housing regulations that encouraged such housing, which is not true in this case. The court stated that "[w]hile the need for such housing certainly continues, the Town's efforts in this regard must be considered in balancing the [public] interests . . . and the need for the particular affordable housing proposed by the plaintiff." Landworks Development, LLC v. Planning andZoning Commission, supra, Superior Court, Docket No. CV 00 0505525. CT Page 15334-gr
Unlike the town of West Hartford in the West Hartford InterfaithCoalition case, supra, 228 Conn. 518 et seq., the planning commission does not claim that there are affordable housing units in Simsbury not considered in the affordable housing figures cited by River Bend. See Part III, supra. It simply does not address the presence of and need for affordable housing in Simsbury.[7]
The approach of the Glastonbury town council chronicled in ChristianActivities Council, Congregational v. Town Council, supra,249 Conn. 607-08, exemplifies how a town body appropriately weighs the need for affordable housing in the town against a substantial public interest, that of preserving open space. There, the Court approved the council's action because it had made measurable progress toward a publicly stated goal of affordable housing units, the town had adopted zoning regulations encouraging affordable housing by providing density bonuses for such development, and the council members took into account their knowledge of other affordable housing units recently completed in the town and the presence of specific alternate sites that were suitable for affordable housing. "Finally, the defendant weighed this evidence of alternative sites together with its interest in protecting the substantial public interest in the preservation of open space, conservation and recreation on the specific parcel in question. On this record, we conclude that the defendant had a reasonable basis upon which to conclude that the public interest in the protection of open space, conservation and recreation clearly outweighed the need for affordable housing in the town." Id., 608.
Another important distinction between this case and ChristianActivities Council, in which both the trial court and the Supreme Court upheld the town council's denial of an affordable housing application, is that the town council considered "a record replete with evidence that, consistently for nearly twenty-five years . . . the town had viewed the parcel in question . . . as particularly appropriate for open space, conservation and recreational purposes. . . ." Christian ActivitiesCouncil, Congregational v. Town Council, supra, 249 Conn. 604. Given that record, and the developer's application for residential development of the parcel, the Supreme Court found that the town council reasonably concluded that "there was a quantifiable probability that the interest in the preservation of open space would have been harmed by granting the plaintiff's application, and that this interest could not be protected if the zone change were granted." Id., 605. In contrast, the parcels in question in Simsbury are now and apparently for some time have been zoned residential. Therefore, granting the subdivision application would not have permitted a use of the property in conflict with some CT Page 15334-gs long-established town policy evidenced in the record.
The approach of the town council upheld in Christian ActivitiesCouncil stands in marked contrast to the approach of the planning commission in this case, which essentially ignored the need for affordable housing in Simsbury in considering River Bend's subdivision application.
 VI
The planning commission's four reasons for denying the subdivision application were stated as follows:
1. Noting that the subdivision application had been "designed for approval pursuant to" a zone change requested by River Bend, and that the zone change had been denied by the zoning commission on July 17, 2000, the planning commission measured the subdivision application against the "existing subdivision regulations" and found it "incomplete and inadequate". In particular, it called for "more residential units than the existing zone districts permit and for more sewer capacity than is presently permitted." It was "inconsistent with the Plan of Development" and "raise[d] traffic concerns."
2. The town's water pollution control authority (the authority) had denied approval of the placement of septic systems within the sewer district, raising "concerns for public health and the environment".
3. The town's conservation commission had denied a wetlands permit for "proposed regulated activities at the site", raising "environmental concerns as to wetlands and watercourses."
4. River Bend's proposed methods for remediating contamination found in part of the site as a result of years of tobacco farming there "is inadequate and is an unacceptable risk to public health and safety."[8]
"In order to comply with the statute and sustain its burden of proof when it denies an application for an affordable housing development, the zoning authority must specifically articulate through the reasons it gives, how and why each of the precepts embodied in subsections (2), (3) and (4) support its denial. In other words, the assigned reasons must address categorically (1) the necessity to protect a particularly identified public interest or interests; (2) must reflect that the commission engaged in the balancing test dictated by subsection (2); and, (3) must manifest an honest effort to devise reasonable changes to the development that will protect the public interest that is jeopardized CT Page 15334-gt by the proposal." Pratt's Corner v. Planning Zoning Commission, Superior Court, judicial district of Hartford, Docket No. CV 92 0508877 (June 21, 1993).
Looking at the planning commission's statement of its individual grounds for denial, there are several serious deficiencies.
 A
It is not entirely clear from its motion for denial whether the planning commission based its disapproval of the subdivision application in part on the zoning commission's disapproval of the zone changes and site plan submitted by River Bend contemporaneous with the subdivision application. The case of Wisniowski v. Planning Commission,37 Conn. App. 303, 315, 655 A.2d 1146, cert. denied, 233 Conn. 909,658 A.2d 981 (1995), is clear authority that such a denial is not permitted under the affordable housing appeals statute. "Embodied in the plaintiffs' application for an affordable housing subdivision is a zone change." Id.
The planning commission indicated that it denied the subdivision application on the ground that the proposed subdivision is "incomplete and inadequate under the existing subdivision regulations," calling for more residential units and more sewer capacity than is permitted.
"The purpose and statutory scheme of the affordable housing statute, Section 8-30g, is to allow affordable housing whether or not it is otherwise permitted under the zoning regulations. Provided the statute is followed as to the requirements for affordable housing, and the specific site for which it is proposed is suitable for that purpose, the underlying zoning of the property makes no difference." Smith-Groh v.Planning and Zoning Commission, supra, Superior Court, Docket No. CV 01 0506781. "An affordable housing application can be approved even though it does not comply with the existing zoning regulations for the zone in which it [is] proposed because Section 8-30g supercedes the usual zoning standards." Id., citing Wisniowski v. Planning Commission, supra,37 Conn. App. 315; see also Landworks Development, LLC v. Planning andZoning Commission, supra, Superior Court, Docket No. CV 00 0505525.
"Our conclusion is that the plain and unambiguous language of § 8-30g
does not contemplate a denial of an affordable housing subdivision application on the ground that it does not comply with the underlying zoning of an area." Wisniowski v. Planning Commission, supra,37 Conn. App. 312. An examination of the legislative history of § 8-30g
reveals that it "was enacted to deal with the particular problem of the CT Page 15334-gu lack of affordable housing in Connecticut. It was not enacted as an amendment to the general zoning law." (Citation omitted.) Id., 314. "Traditional land use policies did not solve Connecticut's affordable housing problem, and the legislature passed § 8-30g to effect a change. The commission makes the mistake of looking at § 8-30g
applications as though they were traditional zoning applications. Section8-30g does not allow a commission to use its traditional zoning regulations to justify a denial of an affordable housing application, but rather forces the commission to satisfy the statutory burden of proof." Id., 317.
If a town could deny a subdivision application on the ground that existing regulations don't allow it, the purpose of § 8-30g would be thwarted. A town could circumvent the requirements of § 8-30g simply by disallowing any zones appropriate for an affordable housing development and denying proposed developments that failed to conform with the existing regulations. Therefore, there isn't sufficient evidence to support the commission's decision on this ground.
Moreover, the commission fails to pinpoint what public interest necessitates protection and would be harmed if the proposed subdivision was approved. In order to qualify as a legitimate basis for denial of an affordable housing application, the commission's reason must represent asubstantial public interest in health, safety or other matters which the commission may legally consider. This requirement was explained by the Supreme Court in Kaufman v. Zoning Commission, supra, 232 Conn. 122. InKaufman, the Court rejected the commission's argument that it was entitled to deny the plaintiff's application based on the mere possibility that the zone change would harm an area watershed. It stated that the "commission was required to show a reasonable basis in the record for concluding that its decision was necessary to protect substantial public interests. The record, therefore, must contain evidence concerning the potential harm that would result if the [application was approved] and concerning the probability that such harm in fact would occur." Id., 156. This language from Kaufman appears in almost every subsequent trial court and appellate level case dealing with affordable housing appeals and has become the operative standard. A "generalized statement" that the proposed subdivision application is "incomplete and inadequate" under existing subdivision regulations, even with specific reference to the number of units and the required sewer capacity, without specific evidence of any impact of the subdivision on a particular and substantial public interest, is not sufficient to deny an affordable housing application. Other courts considering affordable housing appeals consistently require, in accordance with Kaufman, that commissions not only state on the record their precise reasons for denial CT Page 15334-gv but also that they tie that reason to a particular and substantial public interest and state how that public interest is jeopardized by the affordable housing application. See Smith-Groh v. Planning ZoningCommission, supra, Superior Court, Docket No. CV 01 0506781 (determining that commission's general concern about traffic density, absent specific evidence demonstrating the impact of the increased density on public safety, is not a valid reason for denial); Mackowski v. Planning andZoning Commission, supra, 59 Conn. App. 617 (stating that generalized statements concerning adverse impacts on the health, safety and welfare of community created by proposal is not enough and record must contain specific findings of fact to support its reasoning); LandworksDevelopment, LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525 (finding that a general concern about traffic safety is not sufficient because record was devoid of evidence quantifying the harm to traffic safety and the probability that the harm will occur); AvalonBay Communities, Inc. v. Planning and ZoningCommission, Superior Court, judicial district of New Britain, Docket No. CV 00 0500917 (September 6, 2001) (emphasizing the need for commissions to both state how their reasons for denial affect a substantial public interest and to provide supporting evidence); Thompson v. ZoningCommission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 99 0494184 (January 11, 2000) (finding that commission must pinpoint the public interest and quantify the probable harm to this interest).
The commission further states that the "proposed subdivision is inconsistent with the Plan of Development" and that it "raises traffic concerns as a result of the increased density." This reasoning has also been rejected as a basis for denying an affordable housing application.[9]
"It is not enough for the commission to state that traffic safety will be impacted because density will be increased beyond levels called for in the Plan of Development, thereby generating more traffic. This rationale is true for most, if not all affordable housing appeals. Our Supreme Court has held that a town plan is merely advisory. The purpose of the plan is to set forth the most desirable use of land and an overall plan for the town. Because the overall objectives contained in the town plan must be implemented by the enactment of specific regulations, the plan itself can operate only as an interpretive tool." Landworks Development,LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525, citing Smith v. Zoning Board of Appeals, 227 Conn. 71,87-88, 629 A.2d 1089, cert. denied, 510 U.S. 1164, 114 S.Ct. 1190,127 L.Ed.2d 540 (1993).[10]
CT Page 15334-gw
In the present case, the record is devoid of any evidence to support the notion that the claimed deficiencies in the subdivision application implicate a substantial public interest in health, safety or other legitimate concerns, nor does the record reveal any evidence quantifying the probable harm to any interest.
 B
The planning commission assigned as grounds for its denial of the subdivision application the authority's negative action on River Bend's proposal as well as the conservation commission's denial of a wetlands permit. As to the former, the planning commission cited "inadequate sewer allocation" as an issue that raises concerns for public health and the environment." As to the latter, it simply concurs with the findings and conclusions of the conservation commission, citing "environmental concerns as to wetlands and watercourses" and "disturbance to wildlife."
The commission takes the position on this appeal that it could not
approve the subdivision application in the face of the denials by the WPCA and conservation commission, citing Carpenter v. Planning ZoningCommission, 176 Conn. 581, 592, 409 A.2d 1029 (1979), for the proposition that "commission action which is dependent of its proper functioning on action by other agencies over which the . . . commission has no control cannot be sustained unless the necessary action appears to be a probability." See also Stiles v. Town Council, 159 Conn. 212, 221,268 A.2d 395 (1970); D'Amato v. Planning Zoning Commission, Superior Court, judicial district of Hartford, Docket No. CV 92 506426 (Feb. 5, 1993). The viability of this proposition in affordable housing cases is called into question by Kaufman v. Zoning Commission, supra,232 Conn. 122, where the Court rejected an argument by the zoning commission that it could not approve a zone change in the absence of assurance that the planning commission would approve certain road improvements it believed were necessary to protect the public interest in traffic control.
Relying on cases that have allowed zoning commissions to approve proposed development projects on the condition that the applicant take other action, even when the other action required another agency's approval and there was no evidence that the other agency would act favorably on the future request, the Kaufman Court held that "the conditional granting of a zone change was not only authorized but required." Kaufman v. Zoning Commission, supra, 232 Conn. 164. Such a course advances the legislative purpose of encouraging the construction of affordable housing, the Court found. The "zoning commission . . . should be the agency to make the first move. . . . even though the CT Page 15334-gx project may subsequently fail to materialize because one or more of the conditions has for any reason not been met." (Internal quotation marks omitted.) Id., 164-65.
The planning commission attempts to distinguish this case as one where the relevant bodies have actually denied the approval requested by River Bend, not just failed to act. The Superior Court decision upholding the conservation commission's action, however, is on appeal to the Appellate Court, and, although the Supreme Court has recently affirmed a trial court decision dismissing River Bend's action for a declaratory judgment that the authority's action was ultra vires[11], the Court did not "reach the merits of whether the authority properly denied [River Bend's] application." River Bend Associates, Inc. v. Simsbury Water PollutionControl Authority, supra, 262 Conn. 101. The history of this project virtually guarantees that River Bend will pursue its available administrative remedies and, if unsuccessful there, resort to the courts for relief.
Under these circumstances, where the actions of these agencies are far from final, to allow the planning commission to abdicate its responsibility to carry out the weighing process required by § 8-30g
simply because other agencies have made decisions that may ultimately be set aside would be contrary to the approach approved by the Supreme Court in Kaufman. In effect, it gives these agencies veto power over the decisions entrusted to the planning commission, a result already disapproved in another context, Thoma v. Planning ZoningCommission, 31 Conn. App. 643, 626 A.2d 809, cert. granted, 227 Conn. 910,632 A.2d 700, aff'd 229 Conn. 325, 640 A.2d 1006 (1994), and imposes "a requirement that a [subdivision] application cannot be approved without prior approval from the water pollution control authority," NationalAssociated Properties v. Planning Zoning Commission,37 Conn. App. 788, 800, 658 A.2d 114, cert. denied, 234 Conn. 915,660 A.2d 356 (1995), another course of action which has been explicitly disapproved in the affordable housing context.
Therefore, the commission has failed to prove that its denial of the subdivision plan because of the actions of the authority and the conservation commission was "necessary" to protect substantial public interests in health, safety or other matters. Moreover, as pointed out earlier (see part V, supra), the commission failed specifically to address the reasons why the public interest in these concerns was substantial enough to outweigh the town's need for affordable housing.[12]
A similar attempt to cross-reference decisions of other agencies as CT Page 15334-gy reasons for denial of an affordable housing application has been addressed at the trial court level. In Charles E. Williams, Inc. v.Planning Commission, supra, Superior Court, Docket No. CV 98 0492228, the commission based its denial of the plaintiff's application in part on the denial by the wetlands commission of a related application. The court found that, while a commission "may have authority to deny approval of a subdivision solely because the subdivision was disapproved by the wetlands commission . . . under § 8-30g the decision and the report which presumably supports it must be based on a substantial public interest or interests in health, safety or other legally cognizable matters which clearly outweigh the need for affordable housing." (Citation omitted.) Id. The court determined that there was nothing in the record to indicate that the defendant deemed any or all of the reasons for denial assigned by the wetlands commission to constitute substantial public interests needing protection. The need for identification of the specific public interests sought to be protected was pronounced by the Supreme Court in Christian ActivitiesCouncil. . . . In setting forth this requirement the court recognized the possibility that failure to do so might expose the zoning authority to the charge of pretextual conduct. With regard to this reason the defendant failed to articulate the public interest which it sought to protect but merely acceded to the denial of the approval by the wetland's commission. Such action is not only suspiciously pretextual but abdicates the defendant's statutory responsibility under § 8-30g." Id.
So, it is not enough simply to cross-reference the denials of other agencies or commissions without further explanation.
By failing to explain how the authority's and the conservation commission's denials affect the planning commission's ability to make reasonable changes to the application, the commission exposes itself to a charge of pretextual conduct.[13]
 C
For most of the past 100 years about 200 of the 363 acres involved in this development have been used for growing tobacco and nursery stock. In the process various pesticides have been applied to the crops and the ground, and it is admitted by River Bend that about one-third of the subject property contains residual pesticides. River Bend conducted extensive testing of the site prior to making its applications in this case and included in its applications a soil remediation plan. This plan made extensive use of a technique known as "soil mixing" or "soil blending", which attempts to reduce the degree of contamination in the ground by mixing the contaminated soil with clean soil and, where the CT Page 15334-hz degree of contamination is particularly high, removing the contaminated soil altogether.
The planning commission identified the inadequacy of River Bend's soil remediation plan as a reason for its denial of the subdivision application. The commission expressed the view that the expert testimony did "not afford adequate assurances that appropriate environmental safeguards will be provided to address environmental concerns particular to this property."[14]
A commission can deny an affordable housing application "where there is a possibility that approval of the application could result in environmental harm or physical injury to the residents of the development as long as there is a reasonable basis in the record for concluding that its denial was necessary to protect the public interest. The record therefore must contain evidence concerning the potential harm that would result if the [plan was approved] . . . and concerning the probability that such harm in fact would occur." AvalonBay Communities, Inc. v.Planning Zoning Commission, supra, Superior Court, Docket No. CV 00 0500917, quoting Kaufman v. Zoning Commission, supra, 232 Conn. 156.
Paraphrasing the Supreme Court, what Kaufman requires is that the planning commission, based on the record evidence, establish "that (1) there was some quantifiable probability — more than a mere possibility but not necessarily amounting to a preponderance of the evidence — that the [maintenance of an uncontaminated environment] would have been harmed by the [subdivision approval], and (2) the [maintenance of an uncontaminated environment] could not be protected if the [subdivision application] were granted." Christian Activities Council, Congregationalv. Town Council, supra, 249 Conn. 597.
In this case there was a plethora of expert testimony on the presence of contamination in the soil where the proposed housing would be built and the various methods that might be employed to remedy it. Reasonable minds could and did differ as to what is the most effective way to reduce or eliminate the contamination. What the court could not find in the record was any evidence of just what was the "potential harm that would result" from the plan's approval with River Bend's proposed method of remediation and post-remediation testing in place or of the "probability that such harm in fact would occur." AvalonBay Communities, Inc. v.Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0500917. In the absence of any such evidence it is speculation for the planning commission to say that approval of the plan would be an unacceptable risk to public health and safety." The lesson of Kaufman and its progeny is that an affordable housing plan cannot be rejected based CT Page 15334-ha on speculation.
The court has reviewed all of the testimony and reports of the environmental consultants retained by the town of Simsbury and the intervenor. They speak in terms of their "concerns" about the continuing presence of contaminants in the soil where River Bend proposed to build and the "possibilities" of harm that might arise from its failures to measure the contaminants in the ways recommended by the consultants and to conform its remediation plan to their recommendations. They raise the spectre of children's illnesses and damage to wildlife, but none of these consultants was willing or able to say what particular harm would result from the identified chemicals in the soil here or from the methods of remediation proposed by River Bend, let alone the probability that such harm in fact would occur.[15]
River Bend, of course, submitted numerous reports and copious testimony in an attempt to dispel these concerns. It repeatedly and substantially revised its remediation plans to take into account the criticisms and concerns voiced by the planning commission and the intervenor.[16]
There is nothing in the record that supports anything but a mere possibility that the requested subdivision approval would harm the environment. There is no evidence quantifying the potential level of harm to the public health or safety or estimating the probability that the harm would occur if the subdivision was approved. Therefore, the court concludes that the planning commission has failed to carry its burden to show that its decision was necessary to protect substantial public interests in the maintenance of an uncontaminated environment.
The commission stated that "reasonable changes to the subdivision plan may be not made with respect to . . . soil mixing." As discussed previously, it is not sufficient for the commission to make such a "generalized statement". Rather, it is necessary for the planning commission to explain why the public interests cannot be protected by reasonable changes. This is especially true in a case like this where the record discloses that the planning commission, itself, and its expert consultants had identified changes in the plan which would meet its expressed concerns over soil contamination.
In fact, throughout its discussion of the specific defects it perceived in River Bend's subdivision plan, in addition to its failure to weigh the town's need for affordable housing against those defects, the commission also failed to show that reasonable changes could not be made to the application to protect the public interests involved. In placing that burden on the commission, the Supreme Court considered the legislative CT Page 15334-hb history of § 8-30g which reveals its goal of encouraging and facilitating the development of affordable housing throughout the state. See Quarry Knoll II Corp. v. Planning and Zoning Commission, supra,256 Conn. 737.
Several recent cases demonstrate that this burden is important and sometimes difficult to meet. See Charles E. Williams, Inc. v. PlanningCommission, supra, Superior Court, Docket No. CV 98 0492228 (noting that the public interests in protecting water supplies could easily have been accomplished if the Commission ordered reasonable changes to the proposal); AvalonBay Communities, Inc. v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0500917 (finding that commission failed to meet burden of showing that such public interests cannot be protected by reasonable changes to the development by adding adequate parking).
Other courts that have recently addressed subsection (D) have set forth specific guidelines that a commission should follow. In Novella v.Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 050146, the court found that, "except in the case of a site specific reason for the substantial public interest that would be harmed by the proposed affordable housing development, the commission must also address in writing subsection (D) of § 8-30g (c) (1) as to why the public interest cannot be protected by reasonable changes to the affordable housing development." In T N Associates v. Planning and ZoningCommission, Superior Court, judicial district of New Britain, Docket No. CV 98 0492236 (May 16, 2000), the court remanded the plaintiff's applications to the commission and specifically ordered that "[i]n the event that the Commission concludes that the public interest in adequate storm drainage, water and sewer systems cannot be protected by reasonable changes to the plaintiff's application, it shall set forth such findings in detail, identifying the basis for such conclusion, including, but not limited to the recommendations and opinion of the Town's professional staff with respect to each of the systems in question."
"In order to meet the burden of proof that the public interests cannot be protected by reasonable changes to the affordable housing development, the Commission has the burden of proof that the public interests could not be protected by reasonable changes to the size and density of the zone or to the specified designs presented by [the] applicant." Landworks Development, LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525. The planning commission has failed to prove that the public interests it sought to safeguard by denying River Bend's subdivision application could not be protected by reasonable changes in that application. CT Page 15334-hc
 VII
The North Simsbury Coalition, Inc. (the coalition), representing persons living in the vicinity of the property in question, intervened in the proceedings before the planning commission to oppose the proposed development, and it has been made a defendant in this appeal. Its intervention was pursuant to General Statutes § 22a-19, which permits an intervenor to raise claims that a proposed development will unreasonably pollute the "air, water or other natural resources of the state."
In the "Findings with Respect to Intervention Petition" contained in its motion for denial the planning commission, in words lifted from § 22a-19, found that it was being asked by River Bend to "authorize conduct" that "has, or is reasonably likely to have, the effect of unreasonably polluting, impairing, or destroying the public trust in the air, water or other natural resources of the state" and "(t)here are feasible and prudent alternatives to development of this property consistent with reasonable requirements of the public health, safety and welfare and preservation of the public trust on air, water and other natural resources of the state." More than that the commission did not say.
That is, it made no specific findings as to what conduct would unreasonably pollute air, water or other natural resources and what feasible and prudent alternatives there are to the proposed development that would not do so. It did incorporate by reference all of the findings upon which it relied in denying the subdivision plan, but it failed to say which of them supported its finding of the likelihood of pollution. And, none of its earlier findings indicated anything about an alternative to River Bend's development that would preserve "the public trust in the air, water or other natural resources of the state."
Treatment of these issues in this manner is a far cry from what the Supreme Court has held to be the duty of a commission faced with reconciling the demands of § 22a-19 that the environment be protected with the public policy of § 8-30g to encourage affordable housing. For, in Quarry Knoll II Corp. v. Planning and Zoning Commission, supra,256 Conn. 731 et seq, the Court equated a commission's finding under § 22a-19 (b) as to whether there are "feasible and prudent alternatives" to a proposed development consistent with the reasonable requirements of the public health, safety and welfare" with its burden of proving under § 8-30g (1) (C) that there are no "reasonable changes to the affordable housing development" which can protect the public CT Page 15334-hd interest. Thus, the planning commission has the burden of showing that there are "feasible and prudent alternatives" to River Bend's proposal that are "consistent with reasonable requirements of the public health, safety and welfare."
It must "marshal the evidence supporting its decision and . . . persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision."Christian Activities Council, Congregational v. Town Council, supra,249 Conn. 576. This the planning commission has failed to do. Instead, as it did in finding that the flaws in River Bend's proposal outweighed Simsbury's need for affordable housing, it has rested on conclusory statements in the words of the statute, which this court finds insufficient to meet its burden.
The court understands from its review of the record and the brief filed in this appeal by the coalition that the environmental threat perceived by the planning commission arose out of the soil remediation or soil mixing plan proposed by River Bend to deal with the residual pesticides in the ground, since that is the only issue raised by the coalition. Therefore, all of the court's observations concerning the commission's failures of proof on this issue apply here as well. See pp. 38-44, supra.
At the heart of the coalition's position on this appeal is a fundamental misconception about affordable housing appeals as they relate to environmental concerns. The coalition argues that, where an application to a planning commission presents a "serious site remediation question . . . there is no principled way of assigning comparative weight to the "need for affordable housing' and the "need to protect human health and public safety';" therefore, the special rules for affordable housing appeals should not apply. (Brief of North Simsbury Coalition, Inc., pp. 18-19) Environmental concerns trump affordable housing, in its view.
Of course, there is nothing in § 8-30g which exempts from the special rules" applications where there are "serious site remediation question(s)." The Supreme Court, in Quarry Knoll II, where it considered in depth the relation between that statute and § 22a-19, never suggested that there might be some cases where environmental concerns would exempt planning and zoning commissions from their burdens under the affordable housing appeals statute. In the absence of either legislative or judicial indications that such a reading of the two statutes is acceptable, this court declines the coalition's invitation to carve out an environmental exception to the affordable housing appeals CT Page 15334-he procedure.[17]
As the Court said in Quarry Knoll II about another approach to the two statutes proposed by an environmental intervenor, "[t]he defendant's proposed interpretation of the interrelationship between § 22a-19 and § 8-30g would undermine [the] objective" of § 8-30g which is "to encourage and facilitate the development of affordable housing throughout the state." Quarry Knoll II Corp. v. Planning and Zoning Commission, supra, 256 Conn. 737. "Indeed, it would render § 8-30g (c) [now § 8-30g (g)] worthless." Id.
 VII
For all of the reasons stated above, the court finds that the planning commission has failed to satisfy its burden of proof under § 8-30g
(g). The court has considered which of the several remedies provided for in the statute is appropriate.[18] The court believes that the record as a whole demonstrates repeated efforts by River Bend to meet the reasonable demands of the planning commission. For example, after its initial application was denied, it cut the overall size of its project by over 40%, from 640 units to 371 units, while maintaining 25% of the units as affordable housing. It made substantial revisions in both its soil remediation and affordability plans to meet criticisms voiced at the hearings on the initial application. It attempted to mediate the technical issues concerning soil remediation, using the services of the state department of environmental protection.
No legitimate purpose would be served by requiring River Bend to return to the planning commission with yet another modified application.[19]
Approval of River Bend's subdivision application with a minimum of conditions is consistent with the evidence in the record, as disclosed in the court's own "scrupulous examination", Quarry Knoll II Corp. v.Planning Zoning Commission, supra, 256 Conn. 727, of that record.
Accordingly, the court reverses the decision of the planning commission and orders it to approve the subdivision application, with only the following conditions:
1. If the administrative and legal proceedings concerning the action of the Water Pollution Control Authority result in a final judgment upholding that action, the subdivision plan must be modified to conform to that decision.
2. If litigation over the action of the conservation commission results in a final judgment upholding that action, and it affects the subdivision CT Page 15334-hf plan, the plan must be modified to conform to that decision.
3. Analysis of post-remediation soil sampling and groundwater monitoring must demonstrate that all applicable Connecticut Remediation Standard Regulations (RSR's) have been met.
4. All soil remediation activities and post-remediation monitoring must be completed, and the property must be in compliance with the applicable RSR's before any construction begins.
BY THE COURT
 ___________________ Joseph M. Shortall, J.