[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The town of Simsbury has an undeniable need for affordable housing. The plaintiffs, Riverbend Associates, Inc., Griffin Land and Nurseries, Inc. and Fairfield 2000 Homes Corporation (collectively River Bend) proposed a development which would alleviate that need. The defendant zoning commission of the Town of Simsbury denied River Bend's proposed "Housing Opportunity Development" zone, its zone change request and its site plan application, all of which were submitted in aid of the proposed development. This appeal from the zoning commission's denials raises the question whether the commission has met its burden of proving, under the affordable housing land use appeals statute, not only that its decision is supported by sufficient evidence in the record before it but also that its decision is "necessary to protect substantial public interests", that those "public interests clearly outweigh the need for affordable housing", and that those "public interests cannot be protected by reasonable changes to the affordable housing development." See General Statutes § 8-30g (g).
In April 2000 the zoning commission declined to create a new "Housing Opportunity Development" (HOD) zone which River Bend had requested to facilitate its development of 640 housing units on a 363-acre parcel of real estate it owns in Simsbury, 160 of which units would have been restricted for sale to persons of low or moderate income.[1] The commission also refused to rezone the property to the proposed HOD zone and denied approval of a master site plan for the development. Because all of the relevant town agencies also denied River Bend the permits or approvals it needed to proceed with that development, in May 2000 it submitted a revised and much-reduced development proposal. Included in this proposal for 371 homes on the 363 acres was a revised proposal for a zone change and rezoning to the proposed new HOD zone and a revised master site plan.
The parcels of land that make up the 363 acres on which River Bend CT Page 15334-b proposed to place its affordable housing development were and are already zoned for residential use. River Bend proposed a zone change only because Simsbury, in apparent violation of General Statutes § 8-2, has no zoning regulations that would facilitate the development of affordable housing by private interests.[2]
At the same time that River Bend submitted these proposals to the zoning commission, and as part of the same affordable housing proposal, it submitted to the Simsbury planning commission a subdivision application for 102 homes on individual lots, each with its own septic system. The remaining 269 homes would be on common interest ownership land tied into the town's sewer system. Of the total 371 homes in the development, 25% or 93 homes would be reserved for families with low or moderate income.
River Bend also applied to the Simsbury water pollution control authority (the authority), which operates its sewer system, for permission to connect the 269 homes on the common interest ownership land to the system and to the Farmington Valley Health District (the district) for approval for the 102 homes in the subdivision with individual septic systems. Finally, it sought a wetlands permit from the conservation commission. Although the district, as the regional subagency of the state health department with jurisdiction over household septic systems in this area, approved the proposed septic systems for 100 of the 102 homes in the subdivision, the authority refused to allow placement of these systems on 55 of the 102 lots, which are located within the sewer district.[3]
The zoning commission again declined to approve the proposed HOD zone or rezone the property and denied the revised master site plan.[4] This appeal followed. All of the other permits and approvals sought by River Bend from the various town agencies for this smaller development were also denied.[5] Because 25% of the homes in the development are intended for persons of low or moderate income and will be restricted for 30 years to sale to such persons or families, the appeal proceeds under General Statutes § 8-30g, the affordable housing land use appeals statute.
 I
Based on the Stipulation of Facts and Exhibits provided at the hearing of this appeal on July 15, 2002 and the evidence introduced on that date, the court finds that the three plaintiffs are aggrieved by the zoning commission's decision. River Bend Associates, Inc. has been the fee owner of the property in question throughout these proceedings, and CT Page 15334-c Griffin Land and Nurseries, Inc., its wholly owned subsidiary, is the entity whose subdivision application was denied. See General Statutes § 8-30g (f). Fairfield 2000 Homes Corporation has a contractual relationship with Griffin Land and Nurseries, Inc. to provide certain services in connection with the affordable housing component of the proposed development, for a fee, and the zoning commission's action has interfered with the provision of those services and the consequent receipt of fees by Fairfield 2000 Homes Corporation. Thus, it meets the tests for classical aggrievement in that it has a "specific personal and legal interest in the subject matter of the [zoning commission's] decision", which has been "specially and injuriously affected by the decision." See Harris v. Zoning Commission, 259 Conn. 402, 410,788 A.2d 1239 (2002).
 II
The scope and standard of judicial review of an appeal brought under General Statutes § 8-30g has changed while this appeal has been pending as a result of the Connecticut Supreme Court's decision in QuarryKnoll II Corp. v. Planning and Zoning Commission, 256 Conn. 674, 780 A.2d 1
(2001).
At the time the instant appeal was filed, the version of the appeal statute in effect provided in relevant part:
 Upon an appeal taken under subsection (b) of this section, the burden shall be on the Commission to prove, based upon the evidence in the record compiled before such commission that (1) (A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the Commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development. If the Commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.
Prior to Quarry Knoll II, the applicable explanation of this standard CT Page 15334-d of review was set forth in Christian Activities Council, Congregationalv. Town Council, 249 Conn. 566, 583, 735 A.2d 231 (1999). Under that standard, the commission had the burden on an affordable housing appeal to persuade the reviewing court that there was sufficient evidence in the record to support the reasons given for its decision. If the commission was able to show that "sufficient evidence" reasonably supported its determination as to subsections (A) through (D), the commission's decision had to be upheld. See Christian Activities Council,Congregational v. Town Council, supra, 249 Conn. 583.
In Quarry Knoll II, the Court considered the effect ofPublic Act 00-206, § 1(g), effective October 1, 2000, on the scope of judicial review. It determined that, because the Act served to clarify the statute, it should be applied retroactively. The effect of the Act, as articulated in Quarry Knoll II, was to change the standard of review by separating into different sentences subsection (A) and subsections (B), (C) and (D). Thus, the Court described a two-step judicial review procedure to be applied to each reason articulated in the commission's decision:
 Under § 8-30g (c) (1) (A), the court must determine, as we had prior to the enactment of P.A. 00-206 whether the commission has shown that its decision is supported by `sufficient evidence' in the record. Under subparagraphs (B), (C) and (D) of the statute, however, the court must review the commission's decision independently, based upon its own scrupulous examination of the record.
Quarry Knoll II Corp. v. Planning and Zoning Commission, supra,256 Conn. 727.
"The difference between the Christian Activities Council and Quarry Knoll review processes is that for the three-part statutory standard of Subsections (B), (C) and (D) to which each commission reason is held, theChristian Activities Council court gave deference to the Commission's determination, so long as it was supported by `sufficient evidence' in the record; while under Quarry Knoll, the reviewing court makes a scrupulous, plenary review of the record and arrives at its own independent determination of whether the Commission's reasons to deny an application meet the three-part test." Landworks Development, LLC v.Planning and Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 00 0505525 (February 8, 2002). "If the Commission meets the initial burden of proof that there is sufficient evidence in the record to support a reason for denial, the trial court then considers CT Page 15334-e the three other statutory factors; namely, whether the decision is necessary to protect substantial public interests in health, safety, or other matters which the Commission may legally consider; that such public interests clearly outweigh the need for affordable housing; and that such public interests cannot be protected by reasonable changes to the affordable housing development. As determined by Quarry Knoll, the Commission has the burden of proof on all of these issues." Id.
"In order to prove that the Commission's decision was necessary to protect substantial public interests in health, safety or other matters which the Commission could legally consider it must establish (1) that it reasonably could have concluded that substantial public interests were implicated by the action based upon the evidence in the administrative record and (2) that it would reasonably have concluded from the Record evidence that its decision was necessary, namely that any public interests could not have been protected if it had approved the application, which is more than a mere possibility than granting the application would harm the public interests." Id., citing ChristianActivities Council, Congregational v. Town Council, supra,249 Conn. 588-89. The burden of proof on the commission that such public interests clearly outweigh the need for affordable housing has similar considerations and, thus, the need for affordable housing is determined on a local and not a regional basis. See id.
"In order to meet the burden of proof that the public interests cannot be protected by reasonable changes to the affordable housing development, the Commission has the burden of proof that the public interests could not be protected by reasonable changes to the size and density of the zone or to the specified designs presented by the applicant." Landworks Development, LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525, citing Kaufman v. ZoningCommission, 232 Conn. 122, 137 (1995); see also Smith-Groh v. Planningand Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 01 0506781 (January 28, 2002).
In keeping with the mandate of Quarry Knoll II, this court has conducted a "plenary review" of the administrative record as it came to the court[6] in order to make its "independent determination" whether the zoning commission has sustained its burden of proof as to the three findings contained in subparagraphs (B), (C) and (D) of § 8-30g (g); viz., "that its decision is based upon the protection of some substantial public interest; the public interest clearly outweighs the need for affordable housing; and there are no modifications that reasonably can be made to the application that would permit the application to be granted."Quarry Knoll II Corp. v. Planning Zoning Commission, supra, CT Page 15334-f256 Conn. 727.
 III
In its Appeal from the zoning commission's denial, River Bend alleged that "the town of Simsbury has an acute need for affordable housing". ¶ 20. In particular, it alleged, inter alia, that:
In 1998 the average price of the 56 new homes built and sold in Simsbury was $456,000; in the same year the average sale price of all homes sold in Simasbury was $236,000, and only 57 sold for less than $150,000; to purchase a median-priced new home built in Simsbury in 1998, a household would require an annual income of more than $150,000. ¶ 20. While these allegations were denied by the zoning commission in its Answer, they were supported by evidence in the record, see, e.g., ROR 2, and the commission introduced no contrary evidence and has made no argument on this appeal that these claims are in error.
In fact, the commission admitted River Bend's allegation that only 3% of Simsbury's entire housing stock qualified as "price-restricted, affordable, or government-assisted units as defined in state statutes, ranking Simsbury 99th of 169 towns in Connecticut." Appeal, ¶ 20f. From this admission and the evidence in the record the court finds that the need for affordable housing in Simsbury is, indeed, acute and undeniable.
Furthermore, the court finds, as did the Simsbury planning commission, that "River Bend's proposal is consistent with the objective of the Plan of Development to provide affordable housing." Planning Commission Referral of the Modified HOD Zone Amendment, Zone Change and Site Plan to the Zoning Commission, p. 2, which appears as Record No. 191 in the companion appeal from the planning commission. See n. 5, supra. In fact, River Bend's proposal would increase the stock of affordable housing in Simsbury from 263 units to 356 units, an increase of 35%.
The decisions of the zoning commission must be evaluated in light of Simsbury's need for affordable housing, River Bend's proposal to meet that need and the policy of the state of Connecticut to encourage the development of affordable housing.
 IV
"(T)he key purpose of § 8-30g [the affordable housing land use appeals statute] is to encourage and facilitate the much needed development of affordable housing throughout the state." West HartfordCT Page 15334-gInterfaith Coalition, Inc. v. Town Council, 228 Conn. 498, 511,636 A.2d 1342 (1994). "As a remedial statute, § 8-30g must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) Kaufman v. ZoningCommission, supra, 232 Conn. 140. Consistent with the purpose of the statute, an agency like the zoning commission, when it renders its decision on applications submitted in aid of an affordable housing development, must state its reasons on the record, clearly identifying those specific public interests it seeks to protect, so that the court in reviewing that decision will have a clear basis on which to do so. SeeChristian Activities Council, Congregational v. Town Council, supra,249 Conn. 577. It is only these reasons stated by the agency in its formal decision that can be the basis for the court's review, not "reasons that later might be culled from the record." Id.
Not only must the agency clearly state its reasons and the specific public interests it seeks to protect, but also the evidence adduced at the public hearings on an application must "specifically address the reasons why the public interests involved were substantial enough to outweigh the town's undisputed need for affordable housing." Mackowski v. Planning Zoning Commission, 59 Conn. App. 608, 616, 757 A.2d 1162, cert. granted, 254 Conn. 949, 762 A.2d 902 (2000) (appeal withdrawn September 21, 2001). The agency cannot rely on "generalized statements concerning the adverse impacts on the health, safety and welfare of the community" to justify a decision denying approval of an application related to an affordable housing development. Id., 617.
While the zoning commission, in considering River Bend's applications, was "not limited to considering only the effects of its actions that are definite or more likely than not," Kaufman v. Zoning Commission, supra,232 Conn. 156, it could not reject the application "based on the mere possibility" that some harm might come to a public interest. Id. Rather, "(t)he record . . . must contain evidence concerning the potential harm that would result if the [affordable housing application were approved] and concerning the probability that such harm in fact would occur." Id. "(T)his means that the defendant must establish that it reasonably could have concluded, based on the record evidence, that (1) there was some quantifiable probability — more than a mere possibility but not necessarily amounting to a preponderance of the evidence — that the legitimate preservation of open space would have been harmed by the zone change, and (2) the preservation of open space could not be protected if the zone change were granted." Christian Activities Council,Congregational v. Town Council, supra, 249 Conn. 597.
Where a planning or zoning commission can protect the public interest CT Page 15334-h while advancing the goal of affordable housing by conditionally granting a zone change or approving a subdivision application, it is "not only authorized but required" to do so rather than deny the requested approval. Kaufman v. Zoning Commission, supra, 232 Conn. 164.
A body of law has grown up around these axioms and their corollaries, and it is necessary for the court to measure the decision of the zoning commission in denying River Bend's affordable housing application against these principles.
 V
While there are problems with each of the zoning commission's stated reasons for denying the zone change and disapproving the site plan (see part VI, infra), the overarching flaw in its treatment of these matters is its failure genuinely to weigh Simsbury's need for affordable housing against the various defects it found in the zone change request and the site plan and to prove that the latter "clearly outweigh" the former.
The zoning commission disposed of its statutory obligation to determine whether the public interests it claimed to be protecting "clearly outweigh(ed) the need for affordable housing" in one conclusory sentence repeated twice in its eight-page "motion for denial": "These public interests clearly outweigh the need for affordable housing." P. 4.[7]
The affordable housing appeals procedure firmly places the burden on the zoning commission to prove that the public interests it seeks to protect clearly outweigh the need for affordable housing. This obligation has taken on growing importance, and recent cases underscore concern by reviewing courts that planning and zoning commissions often fail to fulfill this obligation. See Novella v. Planning and Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 00 0501467 (May 9, 2001) (addressing commission's failure to address subsection (C) with respect to any of the reasons it provided in its denial and stating that a commission must make a finding that the public interests clearly outweigh the need for affordable housing and provide the reasons therefore); Mackowski v. Planning and Zoning Commission, supra, 59 Conn. App. 616 (finding that commission failed to address reasons why the public interests involved were substantial enough to outweigh the town's undisputed need for affordable housing).
In the present case, the record contains testimonial and documentary evidence of Simsbury's acute need for affordable housing. Upon the court's order, the zoning commission submitted a listing of all references in its record to the presence of and the need for affordable CT Page 15334-i housing in Simsbury, including any testimony at the public hearings and any discussions of that subject among members of the zoning commission that are a matter of public record. The court searched those references in vain for any evidence that the zoning commission received any information, other than that provided by River Bend, or conducted any discussions concerning the need for affordable housing and how that need stacked up against the problems it saw in River Bend's proposals.
In other words, there is no evidence in the record that the zoning commission addressed or attempted to counter evidence about the lack of affordable housing in Simsbury. It is difficult to conceive how the commission performed the balancing test required by the statute when the record contains no evidence that it recognized or acknowledged such a need. See Charles E. Williams, Inc. v. Planning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 98 0492228 (May 26, 2000) (concluding that a commission cannot legitimately and honestly engage in the balancing exercise mandated by § 8-30g
(c) (1) (C) if the "need" end of the balance beam isn't acknowledged to exist). Therefore, the court cannot find that the commission engaged in the balancing test necessary to satisfy its statutory obligation.
Even if the zoning commission actually considered the need for affordable housing in Simsbury, it has not satisfied its burden of proof. The need for affordable housing in Simsbury is so great, and the town's efforts to improve the situation so minimal, that the interest in affordable housing should have outweighed any of the problems with the application cited by the commission, especially since the zoning commission could have conditioned its approval of the affordable housing application in such a way as to safeguard the legitimate public interests it perceived it perceived to be in danger. In balancing the need for affordable housing against the public interests involved, courts have weighed the town's track record in advancing the goals of affordable housing. See Smith-Groh v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 01 0506781 (determining that the need for affordable housing clearly outweighed any interest to the contrary after considering town's minimal efforts to addresses such need); see alsoLandworks Development, LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525 (considering town's significant efforts in building and implementing policies to build affordable housing and determining that public interests did clearly outweigh the need for affordable housing). In Landworks Development, the Court noted that the town had adopted affordable housing regulations that encouraged such housing, which is not true in this case. The court stated that "[w]hile the need for such housing certainly continues, the Town's efforts in this regard must be considered in balancing the [public] interests . . . and CT Page 15334-j the need for the particular affordable housing proposed by the plaintiff." Landworks Development, LLC v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525.
Unlike the town of West Hartford in the West Hartford InterfaithCoalition case, supra, 228 Conn. 518 et seq., the zoning commission does not claim that there are affordable housing units in Simsbury not considered in the affordable housing figures cited by River Bend. See Part III, supra. It simply does not address the presence of and need for affordable housing in Simsbury.[8]
The approach of the Glastonbury town council chronicled in ChristianActivities Council, Congregational v. Town Council, supra,249 Conn. 607-08, exemplifies how a town body appropriately weighs the need for affordable housing in the town against a substantial public interest, that of preserving open space. There, the Court approved the council's action because it had made measurable progress toward a publicly stated goal of affordable housing units, the town had adopted zoning regulations encouraging affordable housing by providing density bonuses for such development, and the council members took into account their knowledge of other affordable housing units recently completed in the town and the presence of specific alternate sites that were suitable for affordable housing. "Finally, the defendant weighed this evidence of alternative sites together with its interest in protecting the substantial public interest in the preservation of open space, conservation and recreation on the specific parcel in question. On this record, we conclude that the defendant had a reasonable basis upon which to conclude that the public interest in the protection of open space, conservation and recreation clearly outweighed the need for affordable housing in the town." Id., 608.
Another important distinction between this case and ChristianActivities Council, in which both the trial court and the Supreme Court upheld the town council's denial of an affordable housing application, is that the Glastonbury town council considered "a record replete with evidence that, consistently for nearly twenty-five years . . . the town had viewed the parcel in question . . . as particularly appropriate for open space, conservation and recreational purposes." Christian ActivitiesCouncil, Congregational v. Town Council, supra, 249 Conn. 604. Given that record, and the developer's application for residential development of the parcel, the Supreme Court found that the town council reasonably concluded that "there was a quantifiable probability that the interest in the preservation of open space would have been harmed by granting the plaintiff's application, and that this interest could not be protected if the zone change were granted." Id., 605. In contrast, the parcels in CT Page 15334-k question in Simsbury are now and apparently for some time have been zoned residential. Therefore, granting River Bend's applications would not have permitted a use of the property in conflict with some long-established town policy evidenced in the record.
The approach of the town council upheld in Christian ActivitiesCouncil stands in marked contrast to the approach of the zoning commission in this case, which essentially ignored the need for affordable housing in Simsbury in considering River Bend's affordable housing applications.
 VI
The zoning commission denied River Bend's proposed amendment to the zoning regulations to create a HOD zone, denied its requested zone change to the proposed zone and denied its site plan application. Some of its stated concerns overlap these three decisions; a few are peculiar to the individual denials. The court will look at the latter first and then turn its attention to the overlapping concerns.[9]
"In order to comply with the statute and sustain its burden of proof when it denies an application for an affordable housing development, the zoning authority must specifically articulate through the reasons it gives, how and why each of the precepts embodied in subsections (2), (3) and (4) support its denial. In other words, the assigned reasons must address categorically (1) the necessity to protect a particularly identified public interest or interests; (2) must reflect that the commission engaged in the balancing test dictated by subsection (2); and, (3) must manifest an honest effort to devise reasonable changes to the development that will protect the public interest that is jeopardized by the proposal." Pratt's Corner v. Planning Zoning Commission, Superior Court, judicial district of Hartford, Docket No. CV 92 0508877 (June 21, 1993).
Looking at the zoning commission's statement of its individual grounds for denial, there are several serious deficiencies.
 A Denial of the HOD Zone Amendment
The commission found that the proposed HOD zone regulations did "not provide for appropriately designed subdivisions" and did "not meet the criteria for a traditional neighborhood development". As a preliminary matter, the commission's concerns about the design and character of the CT Page 15334-l subdivision appear to relate to the development of the specific site and not to the general zoning amendment sought in this particular application. In Smith-Groh v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 01 0506781, the commission cited adverse traffic at the site as a reason for denying the applicant's zoning amendment application. The court rejected this reason on the ground that the "reason is directed to the development of the specific site, which is not germane to a general zoning amendment. . . ." Id. Therefore, it appears that the commission's site plan-specific concern with the subdivision's design and character is not valid as a basis for denying the zone amendment application. Indeed, courts have determined that certain of a commission's concerns are more appropriately addressed at the site-plan or subdivision review stage rather than in the context of more generalized zone amendment or zone change applications. See Nicholsv. Planning and Zoning Commission, Superior Court, judicial district of Hartford, Docket No. CV 94 0540477 (June 9, 1995) (finding that traffic concerns are better addressed during the subdivision approval process rather than during the zone change approval process).
In addition to failing to explain exactly how the subdivisions are inappropriately designed or how they fail to meet the criteria for a traditional neighborhood development, the commission fails to pinpoint what public interest necessitates protection and would be harmed if the proposed amendment was approved.
In order to qualify as a legitimate basis for denial of an affordable housing application, the zoning commission's reason must represent asubstantial public interest in health, safety or other matters which the commission may legally consider. This requirement was explained by our Supreme Court in Kaufman v. Zoning Commission, supra, 232 Conn. 122. InKaufman, the Court rejected the commission's argument that it was entitled to deny the plaintiff's application based on the mere possibility that the zone change would harm an area watershed. It stated that the "commission was required to show a reasonable basis in the record for concluding that its decision was necessary to protect substantial public interests. The record, therefore, must contain evidence concerning the potential harm that would result if the [application was approved] and concerning the probability that such harm in. fact would occur." Id., 156. This language from Kaufman appears in almost every subsequent trial court and appellate level case dealing with affordable housing appeals and has become the operative standard.
A general concern about the character of the proposed neighborhoods pursuant to the proposed zoning amendment, without specific evidence of the impact of those characteristics on a particular and substantial CT Page 15334-m public interest, is not sufficient to deny an affordable housing application. Other courts considering affordable housing appeals consistently require, in accordance with Kaufman, that commissions not only state on the record their precise reasons for denial but also that they tie that reason to a particular and substantial public interest and state how that public interest is jeopardized by the affordable housing application. See Smith-Groh v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 01 0506781 (determining that commission's general concern about traffic density, absent specific evidence demonstrating the impact of the increased density on public safety, is not a valid reason for denial); Mackowski v. Planning and ZoningCommission, supra, 59 Conn. App. 617 (stating that generalized statements concerning adverse impacts on the health, safety and welfare of community created by proposal is not enough and record must contain specific findings of fact to support its reasoning); Landworks Development, LLCv. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0505525 (finding that a general concern about traffic safety is not sufficient because record was devoid of evidence quantifying the harm to traffic safety and the probability that the harm will occur); AvalonBayCommunities, Inc. v. Planning and Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 00 0500917 (September 6, 2001) (emphasizing the need for commissions to both state how their reasons for denial affect a substantial public cnterest and to provide supporting evidence); Thompson v. Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 99 0494184 (January 11, 2000) (finding that commission must pinpoint the public interest and quantify the probable harm to this interest).
In the present case the record is devoid of any evidence to support the notion that the character and design of the subdivision implicates a substantial public interest in health, safety or other legitimate concerns, nor does the record reveal any evidence quantifying the probable harm to any interest.
Moreover, courts have addressed similar "character of the neighborhood" reasons for denying an affordable housing application and determined that such reasons do not withstand scrutiny and would thwart the important purposes of § 8-30g. In Nichols v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 94 0540477, for example, the commission cited as a reason for its denial of the plaintiff's applications that the proposed zone change was out of character with the surrounding area and that the parcel was unsuitable for the development proposed. The court found that these "character of the neighborhood" reasons usually relate to feared diminution of property values rather than substantive consideration of size or bulk. The court determined that CT Page 15334-n in the context of affordable housing, "protecting property values as a substantial public interest falls to a lower level in the hierarchy of importance" and that, therefore, the commission failed to demonstrate that these reasons implicated a substantial public interest. Id.
Similarly, in AvalonBay Communities, Inc. v. Planning and ZoningCommission, supra, Superior Court, Docket No. CV 00 0500917, the commission rejected the plaintiff's affordable housing application citing vague concerns about the density of the proposal yet failing to address how density raised substantial health and safety issues. The court held that, while a zoning commission is justified in considering the effects of a proposal on surrounding property if public interests are implicated, it is not justified in denying an application simply because "it does not `fit in' with the surrounding properties." Id.
The zoning commission stated that it was concerned about certain deficiencies in the proposed HOD zone regulations. The commission characterized these as "drafting deficiencies" and included concerns that the term "Housing Opportunity Unit" is defined but not used in the zone regulations or site plan, that the regulations do not provide for a standard for "flag lots" and that the regulations contain no "buffer" provision.
Even if these reasons were supported by sufficient evidence, they would not withstand the court's plenary review. It is impossible to see how these drafting quibbles implicate a substantial public interest in health, safety or other legitimate matters. The commission has failed to identify any specific public interest it seeks to protect, nor does it indicate how or why this public interest will be endangered by the drafting deficiencies. The record is bare of any evidence of any quantifiable probability of harm to any public interest. As such, this reasoning also fails to satisfy the standard set forth in Kaufman. A similar reason for denial was given by the zoning authority in Thompsonv. Zoning Commission, supra, Superior Court, Docket No. CV 99 0494184. There the commission cited various application deficiencies as a reason for denying the plaintiff's zoning amendment and zone change applications. The court determined that minor administrative deficiencies do not rise to the level of a public interest so as to warrant the denial of an affordable housing application. The court noted that these deficiencies can easily be cured prior to final approval or can be made a condition of approval. Id., citing Kaufman v. Zoning Commission, supra,232 Conn. 147.
The zoning commission also rejected the proposed HOD zone amendment because it found there to be deficiencies in the affordability plan. CT Page 15334-o Consultants retained by the commission had made several cogent and thoughtful observations about the affordability plan as originally proposed by River Bend. When it submitted its revised applications to the zoning commission, River Bend incorporated many of those suggestions, but not all. In denying the proposed zone change the commission dictated that "(a)ll of the suggestions of [its consultants] should be accepted intoto and the required down-payment for affordable units should not exceed 10%."
The commission's demand that River Bend conform its affordability plan to its consultants' standards "reads into the statute a stricter standard than is mandated by the statute. . . ." West Hartford InterfaithCoalition, Inc. v. Town Council, supra, 228 Conn. 523. In West HartfordInterfaith Coalition the town council denied a zone change and argued unsuccessfully on appeal that the developer should have been required to demonstrate "not only an intention to provide affordable housing but also the likelihood that it had the practical ability to effectuate its proposal." Id., 522. The thrust of the critique of the affordability plan by the commission and its consultants in this case was that its provisions would place practical obstacles in the way of achieving the goal of affordable housing in Simsbury. Thus, it is substantially the same as the unsuccessful argument of the West Hartford town council.
River Bend's revised proposal contained a provision setting a 20% maximum down-payment limit and made it clear that this figure was not a rigid rule but a flexible maximum. This court takes judicial notice of the regulations of the state department of economic and community development governing affordable housing appeals, which allow a maximum down-payment of 20% for calculating the sale and resale price of units in an affordable housing development under Section 8-30g. Regulations of Connecticut State Agencies § 8-30g-8 (c).
Since the plan was within state guidelines, the commission's concern with the down-payment, as well as its other stipulations, were mere expressions of its opinions about the affordability plan. "The commission's expressions of opinion d[o] not . . . rise to the level of sufficient evidence to sustain its burden of proof. . . ." (Internal quotation marks omitted.) AvalonBay Communities v. Planning and ZoningCommission, supra, Superior Court, Docket No. CV 00 0500917 (finding that commission's reason that parking provisions in proposal were inadequate because there was no supporting evidence and it was a mere expression of opinion).
This reason also fails the court's plenary review. The commission has failed to identify a particular public interest or state how that public CT Page 15334-p interest is jeopardized by the affordability plan as revised. There is no evidence that the maximum downpayment set by River Bend or the other provisions of its affordability plan critiqued by the commission and its consultants implicate a substantial public interest in health, safety or other legitimate concerns. At best the commission's concerns with the affordability plan can be characterized as a policy disagreement, not a public health or safety issue that warrants a denial of the application.
The zoning commission has not shown that the public interests it was seeking to protect by rejecting the proposed zone amendment for these reasons clearly outweigh the need for affordable housing. As discussed previously (see Part V, supra), this element is of prime importance and requires a finding that a commission explicitly address the reasons why the public interests involved were substantial enough clearly to outweigh the town's need for affordable housing. There is no discussion of Simsbury's need for affordable housing or any indication that the commission considered evidence concerning the need for such housing in Simsbury in denying the proposed zone amendment.
In the present case the commission has also failed to show that reasonable changes could not be made to the application that would protect the public interests involved. "In order to meet the burden of proof that the public interests cannot be protected by reasonable changes to the affordable housing development, the Commission has the burden of proof that the public interests could not be protected by reasonable changes to the size and density of the zone or to the specified designs presented by [the] applicant." Landworks Development, LLC v. Planning andZoning Commission, supra, Superior Court, Docket No. CV 00 0505525, citing Kaufman v. Zoning Commission, supra, 232 Conn. 137. In placing the burden on the commission, the Supreme Court considered the legislative history of § 8-30g which reveals its goal of encouraging and facilitating the development of affordable housing throughout the state. See Quarry Knoll II Corp. v. Planning and Zoning Commission, supra,256 Conn. 737.
Several recent cases demonstrate that this burden is important and often difficult to meet. See Charles E. Williams, Inc. v. PlanningCommission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 98 0492228 (May 24, 2000) (noting that the public interests in protecting water supplies could easily have been accomplished if the commission ordered reasonable changes to the proposal); AvalonBay Communities, Inc. v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0500917 (finding that commission failed to meet burden of showing that such public interests cannot be protected by reasonable changes to the development by adding adequate CT Page 15334-q parking).
Some of the courts that have recently addressed this requirement have set forth specific guidelines that a commission should follow. In Novellav. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 050146, the court found that "except in the case of a site specific reason for the substantial public interest that would be harmed by the proposed affordable housing development, the commission must also address in writing subsection (D) of § 8-30g (c) (1) as to why the public interest cannot be protected by reasonable changes to the affordable housing development." (Emphasis added). In T N Associates v.Planning and Zoning Commission, Superior Court, judicial district of New Britain, Docket No. CV 98 0492236 (May 16, 2000), the court remanded the plaintiff's applications to the commission and specifically ordered that "[i]n the event that the Commission concludes that the public interest in adequate storm drainage, water and sewer systems cannot be protected by reasonable changes to the plaintiff's application, it shall set forth such findings in detail, identifying the basis for such conclusion, including, but not limited to the recommendations and opinion of the Town's professional staff with respect to each of the systems in question."
In the present case the commission doesn't simply fail to prove why reasonable changes could not be made to the application to protect public interests, it expressly states that changes it considered reasonable could, in fact, be made. For example, the commission's decision expressly states "[c]ertain of these public interests could be protected by reasonable changes to the affordable housing development by incorporating all the changes to the HOD zone amendment." By insisting that all of the changes it recommended in the zoning amendment be accepted and that its consultants' suggestions be accepted "in toto" as to the affordabiity plan, however, the zoning commission telegraphed that it was not willing to accept "reasonable" changes; it would approve the plan only with its changes and no other way.
 B Denial of Zone Change
The Supreme Court has concluded that the legislature intended the appeals procedure of § 8-30g to apply to the defendant's legislative decision to grant or deny the zone change. See West Hartford InterfaithCoalition, Inc. v. Town Council, supra, 228 Conn. 508. Thus, § 8-30g
applies to the commission's denial of the zone change application. CT Page 15334-r
The commission indicated that because the HOD zone amendment was denied, the zoning map could not be altered to a nonexistent zone. This reason is not a sufficient basis for denying a zone change application. In AvalonBay Communities, Inc. v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0500917, the commission was faced with three applications: an amendment to the existing zoning regulations, a petition to change the particular parcel in accordance with the zoning amendment and a site plan application. The commission denied the zone change application and reasoned that "it cannot adopt a change of zone that is created by amendment to . . . zoning regulations that have not been adopted by P Z." Id. The court rejected this reasoning and stated that "[the commission] cannot simply deny an application to amend its zoning regulations then deny an application to rezone the property to the amended zoning regulations, reasoning that the proposed rezone fails to comply with current zoning regulations." Id.; see also Wisniowski v.Planning Commission, 37 Conn. App. 303, 317, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995).
Even assuming that this reason was valid and supported by sufficient evidence in the record, it does not withstand plenary review. The mere denial of the zoning amendment application cannot constitute a threat of harm to a substantial public interest unless the commission explicitly identifies both the specific harm and the public interest it seeks to protect, as required by Kaufman. The commission has not shown a reasonable basis in the record for concluding that its decision was necessary to protect substantial public interests, nor did the record contain evidence concerning the potential harm that may result if the zone change were approved and concerning the probability that such harm would in fact occur.
The zoning commission also assigned as grounds for its denial of the zone change the authority's negative action on River Bend's proposal, commenting that "the Applicants specifically requested the WPCA for approval of such a plan with higher density than allowed by current zoning and that plan was denied."
The commission takes the position on this appeal that it could not
approve River Bend's applications in the face of the denial by the authority, citing Carpenter v. Planning Zoning Commission,176 Conn. 581, 592, 409 A.2d 1029 (1979), for the proposition that "commission action which is dependent of its proper functioning on action by other agencies over which the . . . commission has no control cannot be sustained unless the necessary action appears to be a probability." See also Stiles v. Town Council, 159 Conn. 212, 221, 268 A.2d 295
(1970); D'Amato v. Planning Zoning Commission, Superior Court, CT Page 15334-s judicial district of Hartford, Docket No. CV 92 506426 (Feb. 5, 1993). The viability of this proposition in affordable housing cases is called into question by Kaufman v. Zoning Commission, supra, 232 Conn. 122, where the Court rejected an argument by the zoning commission that it could not approve a zone change in the absence of assurance that the planning commission would approve certain road improvements it believed were necessary to protect the public interest in traffic control.
Relying on cases that have allowed zoning commissions to approve proposed development projects on the condition that the applicant take other action, even when the other action required another agency's approval and there was no evidence that the other agency would act favorably on the future request, the Kaufman Court held that "the conditional granting of a zone change was not only authorized but required." Kaufman v. Zoning Commission, supra, 232 Conn. 164. Such a course advances the legislative purpose of encouraging the construction of affordable housing, the Court found. Id. "(T)he zoning commission . . . should be the agency to make the first move . . . even though the project may subsequently fail to materialize because one or more of the conditions has for any reason not been met." Id., 164-65.
The zoning commission attempts to distinguish this case as one where the relevant body has actually denied the approval requested by River Bend, not just failed to act. Although the Supreme Court has recently affirmed a trial court decision dismissing River Bend's action for a declaratory judgment that the authority's action was ultra vires[10], the Court did not "reach the merits of whether the authority properly denied [River Bend's] application." River Bend Associates, Inc. v.Simsbury Water Pollution Control Authority, supra, 262 Conn. 101. The history of this project virtually guarantees that River Bend will pursue its available administrative remedies and, if unsuccessful there, resort to the courts for relief.
Under these circumstances, where the authority's decision is far from final, to allow the zoning commission to abdicate its responsibility to carry out the weighing process required by § 8-30g simply because the authority has made a decision that may ultimately be set aside would be contrary to the approach approved by the Supreme Court in Kaufman. In effect, it gives the authority veto power over the decisions entrusted to the zoning commission, a result already disapproved in another context,Thoma v. Planning Zoning Commission, 31 Conn. App. 643, 626 A.2d 809, cert. granted, 227 Conn. 910, 632 A.2d 700, aff'd 229 Conn. 325,640 A.2d 1006 (1994), and imposes "a requirement that a [subdivision] application cannot be approved without prior approval from the water pollution control authority," National Associated Properties v. PlanningCT Page 15334-t Zoning Commission, 37 Conn. App. 788, 800, 658 A.2d 114, cert. denied, 234 Conn. 915, 660 A.2d 356 (1995), another course of action which has been explicitly disapproved in the affordable housing context.
Therefore, the commission has failed to prove that its denial of the zone change because of the action of the authority was "necessary" to protect substantial public interests in health, safety or other matters. Moreover, as pointed out earlier (see part V, supra), the commission failed specifically to address the reasons why the public interest in these concerns was substantial enough to outweigh the town's need for affordable housing. Nor, did it show that reasonable changes could not be made to the application to protect the public interests involved.
A similar attempt to cross-reference decisions of other agencies and commissions as reasons for denial of an affordable housing application has been specifically addressed at the trial court level. In Charles E.Williams, Inc. v. Planning Commission, supra, Superior Court, Docket No. CV 98 0492228, the commission based its denial of the plaintiff's application in part on the denial by the wetlands commission of a related application. The court found that, while a commission "may have authority to deny approval of a subdivision solely because the subdivision was disapproved by the wetlands commission . . . under § 8-30g the decision and the report which presumably supports it must be based on a substantial public interest or interests in health, safety or other legally cognizable matters which clearly outweigh the need for affordable housing." (Citation omitted.) Id. The court determined that there was "nothing in the record to indicate that the defendant deemed any or all of the reasons for denial assigned by the wetlands commission to constitute substantial public interests needing protection. The need for identification of the specific public interests sought to be protected was pronounced by the Supreme Court in Christian Activities Council. . . . In setting forth this requirement the court recognized the possibility that failure to do so might expose the zoning authority to the charge of pretextual conduct. With regard to this reason the defendant failed to articulate the public interest which it sought to protect but merely acceded to the denial of the approval by the wetlands commission. Such action is not only suspiciously pretextual but abdicates the defendant's statutory responsibility under § 8-30g." Id.
So, it is not enough simply to cross-reference the denials of other agencies or commissions without further explanation.
By failing to explain how the authority's denial affects the zoning commission's ability to make reasonable changes to the applications, the commission exposes itself to a charge of pretextual conduct. CT Page 15334-u
Even if this reason was supported by sufficient evidence, it does not withstand the court's plenary review. The commission has failed to identify the specific public interest it is seeking to protect and fails to satisfy the test set forth in Kaufman that it show a reasonable basis in the record for concluding that its decision was necessary to protect substantial public interests, and that the record contain evidence concerning the potential harm that would result and concerning the probability that such harm in fact would occur.
In denying rezoning the zoning commission also found that, while the amount of traffic was "less than originally proposed" (in the 640-unit original proposal), it still constituted a "major concern". Specifically, the commission indicated its concern that the proposed development would cause increased traffic "on various arterials, collectors and local streets."
As a preliminary matter, it is not clear that the commission's traffic concerns should have been addressed in the context of a zone change application. As discussed previously, courts have determined that certain of a commission's concerns are more appropriately addressed at the site plan or subdivision review stage rather than in the context of a zone change application.
Even assuming, however, that this reason was valid and supported by sufficient evidence, it does not withstand the court's plenary review. As to the revised application, the record utterly fails to support a commission finding that traffic concerns represent a substantial public interest in health, safety or other matters which the commission could legally consider and fails to satisfy the test set forth in Kaufman, i.e., the record is devoid of any evidence of a quantifiable probability of harm to any public interest.
The commission has failed to address its traffic concerns in detail and offered only vague and generalized statements. In Mackowski v. Planningand Zoning Commission, supra, 59 Conn. App. 608, the commission cited traffic concerns as a reason for its application denial. The court found that there was insufficient evidence to support the commission's decision because this concern was never addressed in detail but only through generalized statements concerning adverse impacts on the community. Id., 617. The record contained no specific findings of fact concerning traffic to support this allegation and the Court found that the evidence failed to show that the commission's decision was necessary to protect substantial public interests in health and safety or that such public interests clearly outweighed the need for affordable housing. Id. This CT Page 15334-v court reaches the same conclusion as to the zoning commission's action in denying River Bend's application for a zone change. Courts have commonly rejected town concerns about traffic generated by a proposed development where those concerns are based only on potential safety concerns. SeeKaufman v. Zoning Commission, supra, 232 Conn. 162; Town Close Associatesv. Planning and Zoning Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV 93 0527279 (April 24, 1995).
In the present case, the commission appears to have discredited the testimony of the applicants' traffic expert, who believed that traffic density at the proposed site was not a major concern. The Supreme Court addressed a commission's treatment of expert evidence in Kaufman. "Although the commission would have been entitled to deny an application because it did not believe the expert testimony, however, the commission had the burden of showing evidence in the record to support its decision not to believe the experts — i.e., evidence which undermined either the experts' credibility or their ultimate conclusions." (Emphasis original.) Kaufman v. Zoning Commission, supra, 232 Conn. 156-57. The zoning commission has failed to do so in this case. See also Nichols v.Planning Zoning Commission, supra, Superior Court, Docket No. CV 94 540497.
Recently, in Landworks Development, LLC v. Planning and ZoningCommission, supra, Superior Court, Docket No. CV 00 0505525, the court rejected the commission's reason for denying the application on the ground of traffic safety because the quantum of evidence was insufficient. The court cited the failure of the commission to present a traffic expert's or town engineer's report to refute the applicant's expert evidence.
Although the commission had its own expert and the town engineer review the data and conclusions of River Bend's expert as to the original 640-unit plan, the only expert evidence in the record of the revised 371-unit application, other than that of River Bend's expert, was the town engineer's "general comments" on that application, which noted no safety concerns and made only technical suggestions for road improvements that should be addressed.
Finally on the subject of traffic safety, several reviewing courts have determined that traffic density concerns are adequately dealt with by way of conditional approval of applications. In Kaufman, the commission argued that the record supported its decision to deny the zone change application because the development would cause too much traffic on existing roads. See Kaufman v. Zoning Commission, supra, 232 Conn. 162. CT Page 15334-w The Court upheld the trial court's rejection of this reasoning on the grounds that the record showed that the traffic problem could be solved by the improvement of one or more roads. The Court went on to note that "[i]n the context of an application to build affordable housing . . . we agree with the trial court that, on the present record, the conditional granting of a zone change was not only authorized but required." Id., 164. "As long as a conditional zone change approval protects the public interest in traffic control, a proposition that the commission does not contest, such an approval advances the legislative purpose of encouraging the construction of affordable housing." Id.
Another reason why the zoning commission denied rezoning of the property to the proposed HOD zone was that the proposal "does not allow for adequate dispersion of affordable housing units throughout the development so as to avoid the segregation that is apparent from a review of the site plan."
This reason clearly expresses concerns with specific characteristics of the site plan. As discussed previously, this is the type of concern more appropriately raised in the context of a general zoning amendment. Also as stated previously, a general concern about the character of the proposed neighborhood pursuant to the proposal, without specific evidence of the impact of those characteristics on a particular public interest, is not sufficient to deny an affordable housing application.
Also, a zone change is not necessarily dependent upon the continued validity of the site plan. Despite the commission's assertion that the site plan was submitted in conjunction with the zone amendment application and zone change application and that, thus, they were all contingent upon each other, any number of different site plans could have been implemented pursuant to the zone change. Therefore, any deficiencies of the site plan should not affect the zone change application.
Assuming that this reason was valid and supported by sufficient evidence, it does not withstand the court's plenary review. The zoning commission has failed to show that this reason represents a substantial public interest in health, safety or other matters which the commission may legally consider and fails to satisfy the test set forth in Kaufman.
Nowhere in its discussion of the several reasons why the zone change should be denied does the zoning commission specifically address why the public interests involved were substantial enough to outweigh the town's undeniable need for affordable housing. Moreover, it failed to show that reasonable changes could not be made to the application to protect the public interests involved. For example, the commission could have CT Page 15334-x conditionally approved the zone change contingent on the authority's approval.[11] A conditional zone change that incorporated the relevant traffic concerns would have been adequate to protect any substantial public interest. Likewise, the commission's concern with the dispersion of the affordable housing units is an issue that could easily have been addressed by providing a conditional approval of the proposal. SeeThompson v. Zoning Commission, supra, Superior Court, Docket No. CV 99 0494184 (noting that minor administrative deficiencies can be made conditions of approval and don't rise to the level of a substantial public interest).
 C Denial of Site Plan Application[12]
The commission denied the site plan application, it stated, because it had denied the zone amendment and the zone change.
"The purpose and statutory scheme of the affordable housing statute, Section 8-30g, is to allow affordable housing whether or not it is otherwise permitted under the zoning regulations. Provided the statute is followed as to the requirements for affordable housing, and the specific site for which it is proposed is suitable for that purpose, the underlying zoning of the property makes no difference." Smith-Groh v.Planning and Zoning Commission, supra, Superior Court, Docket No. CV 01 0506781. "An affordable housing application can be approved even though it does not comply with the existing zoning regulations for the zone in which it proposed because Section 8-30g supercedes the usual zoning standards." Id., citing Wisniowski v. Planning Commission, supra,37 Conn. App. 315; see also Landworks Development, LLC v. Planning andZoning Commission, supra, Superior Court, Docket No. CV 00 0505525.
"Our conclusion is that the plain and unambiguous language of § 8-30g
does not contemplate a denial of an affordable housing subdivision application on the ground that it does not comply with the underlying zoning of an area." Wisniowski v. Planning Commission, supra,37 Conn. App. 312. Rather, § 8-30g "forces the commission to satisfy the statutory burden of proof." Id., 317; see also T N Associatesv. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 98 0492236.
If a town could deny a site plan application on the ground that existing zoning doesn't allow it, the purpose of § 8-30g would be thwarted. Legislative history reveals that the key purpose of § 8-30g
is to encourage and facilitate affordable housing throughout the state. CT Page 15334-y See West Hartford Interfaith Coalition, Inc. v. Town Council, supra,228 Conn. 511. A town could circumvent the requirements of § 8-30g
simply by disallowing any zones appropriate for an affordable housing development. Therefore, there isn't sufficient evidence to support the commission s decision
Even if there were sufficient evidence to support this action, it does not survive plenary review. The commission failed to indicate any specific public interest it was seeking to protect, nor did it indicate how and to what extent this public interest would be endangered by approval of the site plan, other than by general references to the concerns it had stated in denying the zone amendment and zone change, all of which have been dealt with elsewhere in this memorandum. The commission also failed to show that the public interest it was seeking to protect clearly outweighed the need for affordable housing in Simsbury and that reasonable changes could not be made to the application that would protect the public interests involved.
 D Environmental Concerns; Soil Remediation
For most of the past 100 years about 200 of the 363 acres involved in this development have been used for growing tobacco and nursery stock. In the process various pesticides have been applied to the crops and the ground, and it is admitted by River Bend that about one-third of the subject property contains residual pesticides. River Bend conducted extensive testing of the site prior to making its applications in this case and included in its applications a soil remediation plan. This plan made extensive use of a technique known as "soil mixing" or "soil blending", which attempts to reduce the degree of contamination in the ground by mixing the contaminated soil with clean soil and, where the.degree of contamination is particularly high, removing the contaminated soil altogether.
The zoning commission cited its concerns over the inadequacy of River Bend's plan to remedy the problem of residual pesticides in the soil as a reason for denying both the creation of the requested HOD zone and the proposed site plan. It found that the proposed HOD zone did not "afford adequate assurances that . . . the unproven soil mixing techniques proposed to be utilized will be both safe to the public and effective as a remediation", and that "the public health and safety are at risk if this soil remediation as proposed by [River Bend] is implemented."
A commission can deny an affordable housing application "where there is CT Page 15334-z a possibility that approval of the application could result in environmental harm or physical injury to the residents of the development as long as there is a reasonable basis in the record for concluding that its denial was necessary to protect the public interest. The record therefore must contain evidence concerning the potential harm that would result if the [plan was approved] . . . and concerning the probability that such harm in fact would occur." (Internal quotation marks omitted.)AvalonBay Communities, Inc. v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 00 0500917, quoting Kaufman v. ZoningCommission, supra, 232 Conn. 156.
Paraphrasing the Supreme Court, what Kaufman requires is that the zoning commission, based on the record evidence, establish "that (1) there was some quantifiable probability — more than a mere possibility but not necessarily amounting to a preponderance of the evidence — that the [maintenance of an uncontaminated environment] would have been harmed by the [approval of the HOD zone and the site plan], and (2) the [maintenance of an uncontaminated environment] could not be protected if the [applications] were granted." ChristianActivities Council, Congregational v. Town Council, supra, 249 Conn. 597.
In this case there was a plethora of expert testimony on the presence of contamination in the soil where some of the proposed housing would be built and the various methods that might be employed to deal with it. Reasonable minds could and did differ as to what is the most effective way to reduce or eliminate the contamination. What the court could not find in the record is any evidence of just what was the "potential harm that would result" from the plan's approval with River Bend's proposed method of remediation and post-remediation testing in place or of the "probability that such harm in fact would occur." Id. In the absence of any such evidence it is speculation for the zoning commission to say that approval of the plan would be "an unacceptable risk to public health and safety." The lesson of Kaufman and its progeny is that an affordable housing plan cannot be rejected based on speculation.
The court has reviewed all of the testimony and reports of the environmental consultants retained by the town of Simsbury and the intervenor. They speak in terms of their "concerns" about the continuing presence of contaminants in the soil where River Bend proposed to build and the "possibilities" of harm that might arise from its failures to measure the contaminants in the ways recommended by the consultants and to conform its remediation plan to their recommendations. They raise the spectre of children's illnesses and damage to wildlife, but none of these consultants was willing or able to say what particular harm would result from the identified chemicals in the soil here or from the methods of CT Page 15334-aa remediation proposed by River Bend, let alone the probability that such harm in fact would occur.[13]
River Bend, of course, submitted numerous reports and copious testimony in an attempt to dispel these concerns. It repeatedly and substantially revised its remediation plans to take into account the criticisms and concerns voiced by the planning commission and the intervenor.[14]
There is nothing in the record that supports anything but a mere possibility that the requested subdivision approval would harm the environment. There is no evidence quantifying the potential level of harm to the public health or safety or estimating the probability that the harm would occur if the subdivision was approved. Therefore, the court concludes that the Zoning Commission has failed to carry its burden to show that its decision was necessary to protect substantial public interests in the maintenance of an uncontaminated environment.
The commission stated that "reasonable changes to the subdivision plan may be not made with respect to soil mixing." As discussed previously, it is riot sufficient for the commission to make such a "generalized statement". Rather, it is necessary for the zoning commission to explain why the public interests cannot be protected by reasonable changes. This is especially true in a case like this where the record discloses that the zoning commission, itself, and its expert consultants had identified changes in the plan which would meet its expressed concerns over soil contamination.
 E Referral of the Planning Commission
The zoning commission attempted to support all of its denials of River Bend's submissions by "adopting as reasons" for them recommendations it had received from the planning commission. It made no attempt to show how any of those recommendations meet the stringent standards for affordable housing appeals and did not even state them in its own "motion for denial", contenting itself with directing the reader (including the court, presumably) to "(s)ee copy of Planning Referral attached."
The court does not consider this to have met the zoning commission's obligation to state its reasons on the record, clearly identifying those specific public interests it seeks to protect, so that the court in reviewing its decision will have a clear basis on which to do so. SeeChristian Acitvities Council, Congregational v. Town Council, supra,249 Conn. 577. CT Page 15334-ab
The court has read the referral by the planning commission to the zoning commission, nevertheless. For the most part it is a restatement of the planning commission's reasons for turning down River Bend's subdivision application in connection with this development, which is the subject of a separate appeal to this court.[15] The court's decision upholding that appeal is being released simultaneous with this decision on the zoning commission appeal.
The court notes that, although the planning commission in its referral opines that a special zone to build affordable housing on this property is not necessary, it also finds that "[River Bend's] proposal is consistent with the objective of the Plan of Development to provide affordable housing." Planning Commission Referral of the Modified HOD Zone Amendment, Zone Change and Site Plan to the Zoning Commission, p. 2, which appears as Record No. 191 in the companion appeal from the planning commission. See n. 5, supra.
 VII
The North Simsbury Coalition, Inc. (the coalition), representing persons living in the vicinity of the property in question, intervened in the proceedings before the zoning commission to oppose the proposed development, and it has been made a defendant in this appeal. Its intervention was pursuant to General Statutes § 22a-19, which permits an intervenor to raise claims that a proposed development will unreasonably pollute the "air, water or other natural resources of the state."
In its "Findings with respect to Intervention Petition" the zoning commission, in words lifted from § 22a-19, found that it was being asked by River Bend to "authorize conduct" that "has, or is reasonably likely to have, the effect of unreasonably polluting, impairing, or destroying the public trust in the air, water or other natural resources of the state" and "(t)here are feasible and prudent alternatives to development of this property consistent with reasonable requirements of the public health, safety and welfare and preservation of the public trust on air, water and other natural resources of the state." More than that the commission did not say.
That is, it made no specific findings as to what conduct would unreasonably pollute air, water or other natural resources and what feasible and prudent alternatives there are to the proposed development that would not do so. It did incorporate by reference all of the findings upon which it relied in denying the zone amendment, zone change and site CT Page 15334-ac plan, but it failed to say which of them supported its finding of the likelihood of pollution. And, none of its earlier findings indicated anything about an alternative to River Bend's development that would preserve "the public trust in the air, water or other natural resources of the state."
This treatment of these issues is a far cry from what the Supreme Court has held to be the duty of a zoning commission faced with reconciling the demands of § 22a-19 that the environment be protected with the public policy of § 8-30g to encourage affordable housing. For, in QuarryKnoll II Corp. v. Zoning Commission, supra, 256 Conn. 731 et seq, the Court equated a commission's finding under § 22a-19 (b) as to whether there are "feasible and prudent alternatives" to a proposed development "consistent with the reasonable requirements of the public health, safety and welfare" with its burden of proving under § 8-30g (1) (C) that there are no "reasonable changes to the affordable housing development" which can protect the public interest. Thus, the zoning commission has the burden of showing that there are "feasible and prudent alternatives" to River Bend's proposal that are "consistent with reasonable requirements of the public health, safety and welfare."
It must "marshal the evidence supporting its decision and . . . persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision."Christian Activities Council, Congregational v. Town Council, supra,249 Conn. 576. This the zoning commission has failed to do. Instead, as it did in finding that the flaws in River Bend's proposal outweighed Simsbury's need for affordable housing, it has rested on conclusory statements in the words of the statute, which this court finds insufficient to meet its burden.
The court understands from its review of the record and the brief filed in this appeal by the coalition that the environmental threat perceived by the zoning commission arose out of the soil remediation or soil mixing plan proposed by River Bend to deal with the residual pesticides in the ground, since that is the only issue raised by the coalition. Therefore, all of the court's observations concerning the commission's failures of proof on this issue apply here as well. See pp. 55-60, supra.
Apart from quoting the statute, the commission did not make any specific factual finding, as claimed by the coalition, that "unreasonable pollution was reasonably likely", Responding Brief of Defendant North Simsbury Coalition, Inc. (Coalition Brief, p. 4), nor could it, because none of the witnesses so testified. Likewise, the zoning commission never identified as a "feasible and prudent alternative" to River Bend's CT Page 15334-ad proposal a more detailed study of the site to determine what remediation protocol would be most cost effective, coalition claims to the contrary notwithstanding. (Coalition Brief, pp. 4, 21.) The commission identified no "feasible and prudent alternatives"; it merely found that there are such alternatives. A reviewing court cannot speculate about what a commission meant in its denial, nor can it substitute for the clear statement of the commission's reasons required by the law, see ChristianActivities Council, Congregational v. Town Council, supra, 249 Conn. 577, the rationale suggested by an intervenor.
At the heart of the coalition's position on this appeal is a fundamental misconception about affordable housing appeals as they relate to environmental concerns. The coalition argues that, where an application to a zoning commission presents a "serious site remediation question . . . there is no principled way of assigning comparative weight to the `need for affordable housing' and the `need to protect human health and public safety';" therefore, the special rules for affordable housing appeals should not apply. (Coalition Brief, p. 24.) Environmental concerns trump affordable housing, in its view.
Of course, there is nothing in § 8-30g which exempts from the "special rules" applications where there are "serious site remediation question(s)." The Supreme Court, in Quarry Knoll II, where it considered in depth the relation between that statute and § 22a-19, never suggested that there might be some cases where environmental concerns would exempt planning and zoning commissions from their burdens under the affordable housing appeals statute. In the absence of either legislative or judicial indications that such a reading of the two statutes is acceptable, this court declines the coalition's invitation to carve out an environmental exception to the affordable housing appeals procedure.
As the Court said in Quarry Knoll II about another approach to the two statutes proposed by an environmental intervenor, "The defendant's proposed interpretation of the interrelationship between § 22a-19 and § 8-30g would undermine" the objective "to encourage and facilitate the development of affordable housing throughout the state." Quarry KnollII Corp. v. Planning and Zoning Commission, supra, 256 Conn. 737. "Indeed, it would render § 8-30g (c) [now § 8-30g (g)] worthless." Id.[16]
 VII
For all of the reasons stated above, the court finds that the zoning commission has failed to satisfy its burden of proof under § 8-30g
(g). The court has considered which of the several remedies provided for CT Page 15334-ae in the statute is appropriate.[17] The court believes that the record as a whole demonstrates repeated efforts by River Bend to meet the reasonable demands of the zoning commission. For example, after its initial application was denied, it cut the overall size of its project by over 40%, from 640 units to 371 units, while maintaining 25% of the units as affordable housing. It made substantial revisions in both its soil remediation and affordability plans to meet criticisms voiced at the hearings on the initial application. It attempted to mediate the technical issues concerning soil remediation, using the services of the state department of environmental protection.
No legitimate purpose would be served by requiring River Bend to return to the zoning commission with yet another modified application.[18]
Approval of River Bend's subdivision application with a minimum of conditions is consistent with the evidence in the record, as disclosed in the court's own "scrupulous examination", Quarry Knoll II Corp. v.Planning Zoning Commission, supra, 256 Conn. 727, of that record.
Accordingly, the court reverses the decision of the zoning commission and orders it to approve the Housing Opportunity Zone amendment, rezone the property to the HOD zone and approve the site plan, with only the following conditions:
1. If the administrative and legal proceedings concerning the action of the Water Pollution Control Authority result in a final judgment upholding that action, the site plan must be modified to conform to that decision.
2. If litigation over the action of the conservation commission results in a final judgment upholding that action, and it affects the site plan, the plan must be modified to conform to that decision.
3. Analysis of post-remediation soil sampling and groundwater monitoring must demonstrate that all applicable Connecticut Remediation Standard Regulations (RSR's) have been met.
4. All soil remediation activities and post-remediation monitoring must be completed, and the property must be in compliance with the applicable RSR's before any construction begins.
BY THE COURT
 ___________________ Joseph M. Shortall, J.
CT Page 15334-af